**[DO NOT PUBLISH]**

# IN THE UNITED STATES COURT OF APPEALS

## FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
NOVEMBER 16, 2005
THOMAS K. KAHN
CLERK

**No. 04-10386**

D.C. Docket No. 03-00194-CR-J-25-HTS

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

ELIEZER YEHUDAH NEUFELD,

Defendant - Appellant.

**Appeal from the United States District Court
for the Middle District of Florida**

**(November 16, 2005)**

Before TJOFLAT and KRAVITCH, Circuit Judges and LIMBAUGH*, District Judge.

**LIMBAUGH, District Judge:**

---

* Honorable Stephen N. Limbaugh, United States District Judge for the Eastern District of Missouri, sitting by designation.

A jury found defendant[1] guilty of a conspiracy to distribute 3, 4 methylenedioxymethamphetamine[2], commonly known as "MDMA," or "Ecstasy," a Schedule 1 controlled substance, in violation of Title 21, U.S.C., § 841(a)(1) and (b)(1)(C).  After receiving a 135 month sentence, defendant appeals his conviction and sentence.  In the appeal, defendant maintains that the district court erred:

1.  In denying defendant's motion for a new trial by failing to order sua sponte an evidentiary hearing because of an alleged *Brady*[3] violation;

2.  By allowing introduction at trial Rule 404(b) evidence of two four-year old felony convictions;

3.  In imposing sentence under the Federal Sentencing Guidelines and imposing a forfeiture judgment in violation of *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L.Ed.2d 435 (2000) and *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004);

4.  In calculating the quantity of MDMA attributable to defendant in computing his range of punishment;

5.  In calculating defendant's criminal history on two prior convictions

---

[1]  Defendant-Appellant will be referred to as defendant.

[2] In the indictment, MDMA is spelled methylenedioxymethamphatamine.

[3]  Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

2

adjudicated the same day.

## BACKGROUND

During the year 2002 and until April 30, 2003 the defendant, Roobik Vartanian, Aron Dermer and David Bitton were engaged in the purchase and sale of MDMA. These parties would buy and sell from and to each other and from and to other persons.

Vartanian was arrested for trafficking in MDMA on March 7, 2003. Following his arrest he began cooperating with law enforcement officials as a confidential source. Illegal drug transactions among the four parties, and others, were brought to a halt as a result of a sting operation organized by law enforcement officers with Vartanian's assistance.

The sting culminated in an attempted purchase on April 30, 2003 by Vartanian of 5,000 MDMA pills. Defendant, Dermer and Bitton were involved as the sellers. Vartanian, residing in Jacksonville, Florida, had ordinarily purchased MDMA pills from Dermer who lived in Miami. Vartanian would travel to Miami to pay for and pick up the merchandise. Bitton, as a supplier, had also sold to the defendant and to Dermer and occasionally defendant would act as the middle man in a sale. The purpose of the sting was to implicate defendant, Dermer and Bitton.

A few weeks before April 30, 2003 defendant called Bitton telling him he

3

had an order for 5,000 pills at the price of $5.25. Although the transactions usually occurred in Miami, this one was to take place in Jacksonville, Florida so it would be necessary for the merchandise to be transported there. This increased the price to $5.75/pill and ultimately to $6.00. Bitton agreed to the transaction because the intermediate purchaser was identified as Dermer, a known dealer.

Bitton drove the merchandise from Miami to Jacksonville on April 30th to complete the deal with defendant, Dermer and Vartanian. Pursuant to the sting arrangements, the transaction was to take place at the Avenues Mall in Jacksonville.

Dermer and defendant were in one vehicle, and met Vartanian to set up the purchase. There was some concern about whether the merchandise would be delivered first and the money then paid over, or the payment of the money first. After some face-to-face and telephone discussions, the parties agreed to complete the sale in front of a furniture store across from the mall following which Bitton arrived in a silver Honda Accord vehicle.

During the process of completing the transaction near the furniture store, each of the parties was communicating with each other. Vartanian would confer with Dermer who would, in turn, confer with defendant, and defendant would then relay the conversation to Bitton. It was disclosed that the pills were located in the

4

trunk of Bitton's car and Vartanian was allowed to view the merchandise. At that point, the law enforcement officers converged on the group, and defendant, Dermer and Bitton were arrested. The evidence revealed that the three persons arrested were to have divided the profits from the sale absent the completion of the sting operation.

At the trial, Vartanian, Dermer and Bitton all testified as cooperating witnesses. Bitton and Dermer had both entered pleas of guilty to drug conspiracies and each hoped that the Court would be lenient in sentencing them as a result of their truthful testimony. Vartanian was not charged and had no plea agreement, but anticipating being indicted, entertained hope of a reduced sentence.

Vartanian, Dermer and Bitton all testified as to their prior dealings with defendant. Vartanian stated that he was involved with MDMA purchases from the defendant on three earlier occasions. The first involved a purchase from an un-identified occupant with a silver Honda who gave the pills to defendant, who in turn sold them to Vartanian. The second incident was at defendant's condo in Miami when he purchased pills from the defendant at that location. The third incident involved the purchase from defendant of 2,000 pills which were those Vartanian had in his possession at the time of his arrest March 7, 2003.

Dermer began buying drugs from defendant in January 2002. He first would buy a few 100 pills at a time, and the level increased to 2,000 up to the time of his arrest. From January 2002 on, he would purchase MDMA from the defendant every three or four weeks. He estimated from January 2002 to April 30, 2003 he purchased approximately 30,000 pills from the defendant. Frequently, Bitton was present at the time of the purchases, even though they generally occurred in defendant's apartment in Miami.

Bitton testified that he began supplying MDMA to defendant in January or February of 2002. The transactions began with 500 pills and increased over time to 2,300 to 2,700 pills per transaction. This would occur every couple of weeks. He stated they had to stop for a couple of months because of a dry spell. The dry spell occurred shortly before the April 30th transaction. Most of the purchases occurred at the defendant's condo.

Following his arrest, defendant told Robert Garrison, a narcotics detective with the Jacksonville, Florida sheriff's office that he would sell pills to Dermer who, in turn, would sell them to Vartanian, and defendant's source was Bitton. Defendant told Garrison that he had been involved in selling multi-thousands of pills.

Defendant did not testify, but used as a defense the theory of innocent intent. Defendant, through witnesses, suggested that he believed through a friend, Judah Holland, that the drug transaction of April 30, 2003 was set up on behalf of Holland and law enforcement agents. As a result of the transaction, defendant innocently intended that Holland would receive less prison time for crimes he had committed.[4]

**DISCUSSION**

1.      The Alleged Brady Violation:

During the discovery phase of the case, defendant filed "Motion to Compel Specific Kyles and Brady Information." The district court's standing order required the government to disclose Brady material five days before trial. In addition to the standing order, the district court required the government to review individually each of the items requested to determine whether disclosures were required pursuant to Brady v. Maryland, supra, Giglio v. U.S., 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972) and Kyles v. Whitley, 514 U.S. 419, 115 S.Ct. 1555 (1995).

Portions of the defendant's request seek information which details the

---

[4] In addition to the defense of innocent intent, defendant also urged that he be allowed to exercise a "public authority defense" as well. Shortly before trial, the District Court sustained the government's motion to prevent the defendant from introducing evidence on a "public authority defense."

criminal activities of a cooperating witness which were undertaken by the witness without the authority or approval of the government. Information was also requested concerning misconduct by a cooperating witness that reflects a lack of candor, truthfulness or law abiding character of the informant, such as uncharged criminal conduct or fraud.

The defendant was sentenced January 15, 2004 and on February 4, 2004 he filed "Motion for New Trial due to Newly Discovered Evidence." The newly discovered evidence was that Bitton continued to violate the law by engaging in illegal sales of drugs two weeks before Bitton testified against defendant. The documents attached to defendant's motion allege that on September 24, 2003[5], Bitton was arrested in Miami after he sold drugs to a confidential source working with the Drug Enforcement Administration (DEA) with whom he had previously discussed the transaction.

In the motion defendant admits that the government had complied with the district court's orders by giving the defense copies of Bitton's grand jury testimony, DEA Form-6 reports pertaining to the case as well as Bitton's plea agreement. Defendant's argument is that the government knew, or should have

---

[5] Bitton testified on September 23, 2003, the day before the jury returned a verdict against the defendant here on September 24, 2003.

known, of Bitton's continued drug transactions and should have made this information available to him before Bitton testified.

Defendant maintains that the disclosure of Bitton's behavior would have altered the verdict because Bitton's credibility would be even more suspect. Defendant also suggests that the district court should have *sua sponte* ordered an evidentiary hearing before denying his motion for a new trial.

While defendant argues, on this appeal, that the government committed a *Brady* violation in failing to reveal the Bitton conduct, there was no specific assertion of a Brady violation in the motion for a new trial, based on newly discovered evidence. The matter is of consequence because of the standard of review. If a defendant does not precisely articulate a *Brady* violation in his motion for a new trial, the Court need only conduct a plain error review. On the other hand, the review is for abuse of discretion of a district court's specific denial of a motion for a new trial based on a *Brady* violation. U.S. v. Pettway, 129 Fed. Appx. 583 (11th Cir. 2005) citing U.S. v. Bender, 290 F.3d 1279, 1284 (11th Cir. 2002).

Under the plain error rule "[t]here must be an 'error' that is 'plain' and that 'affect(s) substantial rights.' Moreover, Rule 52(b) leaves the decision to correct the forfeited error within the sound discretion of the court of appeals, and the court

9

should not exercise that discretion unless the error 'seriously affect(s) the fairness, integrity or public reputation of judicial proceedings.'" United States v. Olano, 507 U.S. 725, 732 (1993), *citing*, U.S. v. Young, 470 U.S. 1, 15 (1985) (*quoting* U.S. Atkinson, 297 U.S. 157, 160 (1936)).

Although defendant did not specifically allege a *Brady* violation, in the motion for a new trial this Court, nonetheless, will consider the claim as a *Brady* violation and will conduct a "plain error" review.

It is undisputed that in keeping with the district court's discovery orders, the prosecution, prior to trial, provided Bitton's name, transcripts of his grand jury testimony, DEA form-6 reports regarding Bitton and Bitton's plea agreement. Thus, the only thing not produced were facts setting out Bitton's alleged continuing criminal activity up to the time the jury reached its verdict.

The prosecution is required, under *Brady*, to disclose evidence material to guilt or punishment that is favorable to an accused. Brady, 373 U.S. at 87. In order to establish a *Brady* violation, one must prove:

"(1)   that the Government possessed evidence favorable to the defense,

(2)   that the defendant did not possess the evidence and could not obtain it with any reasonable diligence,

(3)   that the prosecution suppressed the evidence, and

(4)   that a reasonable probability exists that the outcome of the

10

proceeding would have been different had the evidence been disclosed to the defense." (citation omitted).

Moon v. Head, 285 F.3d 1301, 1308 (11th Cir. 2002), cert. denied 537 U.S. 1124 (2003) (citation omitted).

Bitton testified at defendant's trial on September 23, 2003 and the jury returned a verdict the next day. On that day, September 24, 2003, Bitton was arrested while attempting to sell MDMA pills to a Miami DEA confidential informant. For two weeks prior to that time, Bitton had been assisting DEA agents but his continued illegal criminal activity was unknown to those agents until the time of his arrest. Defendant has failed to meet the third and fourth prong of the Moon criteria and perhaps even the first. Bitton's drug arrest occurred at the same time the jury returned a verdict. Even if the prosecution was aware of that arrest, it could not have been used for impeachment purposes as Bitton had testified the day before. In addition, there is nothing to suggest that the outcome of the proceeding would have been different had the evidence of the arrest as well as Bitton's prior and continuing cooperation with DEA agents been made available to the defense. Johnson v. Alabama, 256 F.3d 1156, 1190 (11th Cir. 2000) (No Brady violation where petitioner (defendant) failed to show prejudice from the allegedly supressed items).

Contemporaneous with the "plain error test" defendant has failed to show how the non-disclosure of the evidence involved affected his substantial rights. Possession of the evidence by the defendant that Bitton continued to cooperate with DEA agents, and even continued to deal illegally in drugs, would simply have been cumulative. The jury was aware that Bitton had bought and sold drugs and had entered a plea of guilty for the drug conspiracy involved here. Bitton obviously was a drug dealer. The jury was aware that Bitton had agreed to testify against defendant in exchange for the prospect of a reduced sentence. In addition, even if the additional evidence had been made known to the jury and had caused the jury to disbelieve the testimony of Bitton, there was still ample other evidence upon which the jury could have based its finding of guilt as to the defendant. There is nothing to suggest that the error of omission, if there was one, seriously affected the fairness, integrity or public reputation of the judicial proceeding here. Olano, 507 U.S. at 732. It certainly was not plain error to deny defendant's motion for a new trial without an evidentiary hearing.[6]

---

[6] The defendant alleges in his reply brief that the government suborned perjury by allowing Bitton to testify that he was cooperating with the government while simultaneously remaining a known drug trafficker. Actually, Bitton's illegal dealing in drugs was unknown until the day of his arrest, but since this argument was raised for the first time in defendant's reply brief, it will not be considered. U.S. v. Levy, 379 F.3d 1241, 1244 (11th Cir. 2004)

2.      Alleged Violation of Rule 404(b):

On September 8, 2003, fifteen days before trial, the government filed notice of intent to use evidence of other crimes, wrongs or acts pursuant to Rule 404(b). The notice refers to evidence relating to defendant's arrest on April 1, 1998 "by Davie, Florida police for possession of marijuana with intent to sell, and his subsequent conviction therefore." Also, evidence relating to defendant's "arrest on June 7, 1998 by Hallandale Beach, Florida police for delivery of MDMA, and his subsequent conviction therefore." Copies of the police reports were attached.

"Information to establish prior convictions" was also filed by the government on September 15, 2003 showing that on September 3, 1998 in Broward County, Florida, defendant was convicted of possession of Cannabis, a Florida law felony, and on September 3, 1998 in Broward County, Florida a record of the defendant's conviction of possession and delivery of MDMA, Florida felony violations.

Over defendant's objection, at trial, the district court allowed evidence to be introduced as to defendant's conviction of delivery of MDMA in 1998. The conviction was based on defendant's plea of *nolo contendre*. Immediately before the evidence was introduced the district court properly instructed the jury on how to consider 404(b) evidence.

13

Officer Raphael, of the City of Hallandale Beach police department in Broward County, Florida testified that while he was working in an undercover capacity, defendant sold him several pills of MDMA in June of 1998. The defendant identified the pills "as Ecstasy." When defendant was arrested, he possessed a baggie containing 16 other pills. The officer conducted a field test on the pills and on the basis of his experience determined that they tested positive for "opium alkaloids." The officer further stated that opium alkaloid is a controlled substance as an opium derivative and that at the time of the purchase from the defendant, the pills were identified as Ecstasy.

The jury was further allowed to hear evidence of the April 1, 1998 arrest and later conviction of defendant for possession of Cannabis with intent to sell. That conviction, also, was based on a *nolo contendre* plea.

The district court in the final charge to the jury also repeated the 404(b) instruction given to the jury immediately before the evidence was introduced.

Defendant argues that there was insufficient evidence to prove the 1998 sale of MDMA pills because the plea was *nolo contendre* only, and the officer lacked sufficient credentials to identify the content of the pills allegedly sold. In addition, defendant contends that Cannabis is a different drug than Ecstasy, and the conviction is too remote to be admissible. Finally, defendant argues that the

14

prejudice to defendant by the admission of this evidence far exceeds its probative value.

Rule 404(b) provides that:

> "(b) *Other crimes, wrongs, or acts.* Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial."

"We review the district court's ruling on admission of evidence for abuse of discretion." U.S. v. Jiminez, 224 F.3d 1243, 1249 (11th Cir. 2000), U.S. v. Chavez, 204 F.3d 1305, 1316 (11th Cir. 2000).

"To be admissible, 404(b) evidence must: (1) be relevant to one of the enumerated issues and not to the defendant's character; (2) the prior act must be proved sufficiently to permit a jury determination that the defendant committed the act; and (3) the evidence's probative value cannot be substantially outweighed by its undue prejudice and the evidence must satisfy Rule 403." Chavez, 204 F.3d at

1317.[7]

Applying the first prong of the <u>Chavez</u> test, we hold that both of defendant's 1998 convictions were directly related to a material issue in this case and not to his character. The convictions and the evidence supporting them were proffered by the government on the issue of intent. Even though each conviction involved a single act, and although one involved a drug different than MDMA, such evidence is directly relevant to the question of intent concerning the charged crime of conspiracy to distribute MDMA. Defendant entered a plea of not guilty and therefore intent becomes a material factor. <u>U.S. v. Calderon</u>, 127 F.3d 1314, 1332 (11th Cir. 1997). ("Ample precedent exists in this circuit finding that a not guilty plea in a drug conspiracy case, such as we have here, makes intent a material issue and opens the door to admission of prior drug-related offenses as highly probative, and not overly prejudicial, evidence of a defendant's intent.")

In applying the second prong of the <u>Chavez</u> test, the evidence of defendant's prior 1998 convictions must be sufficient to support a finding that he actually committed the acts in question. As to the Cannabis conviction, the evidence consisted of a transcript of the plea, conviction and sentence. Certainly, the

---

[7] Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury, or by considerations of undue delay, waste of time or needless presentation of cumulative evidence." <u>Fed. R. Evid</u> 403, <u>Chavez</u>, 204 F.3d at 1317, n. 9.

conviction itself is sufficient proof that he committed the prior act. "The fact that the conviction was based on a guilty plea is inconsequential. See United States v. Edwards, 696 F.2d 1277, 1280 (11th Cir.), cert. denied, 461 U.S. 909, 103 S.Ct. 1884, 76 L.Ed.2d 813 (1983) (holding that appellant's own statement admitting act, even if mere puffery, is sufficient to justify a jury finding that he committed the act for purposes of Rule 404(b).)" Calderon, 127 F.3d 1332.

The evidence as to the MDMA 1998 conviction deserves further comment. In addition to the transcript of the plea, verdict and sentence, evidence was introduced of the illegal transaction itself. A police officer testified that while acting under cover, he purchased MDMA pills from the defendant. Following an arrest and search, it was discovered that defendant had additional pills on his person. The officer conducted a field test of the pills and on the basis of his training and experience, determined that they contained opium alkaloids. In addition, the officer testified that the defendant admitted the pills were "Ecstasy" or MDMA.

Finally, as to each of the 1998 convictions, while a plea of *nolo contendre* is not a plea of guilty, it is a plea of no contest; that is, a defendant admits that the government has sufficient evidence to take the case to a jury. We conclude, therefore, that as to the 1998 convictions there was sufficient evidence to satisfy

the second prong that a jury was able to determine that the defendant committed the prior acts.

We also conclude that under the third prong of the Chavez test, the probative value of the 1998 convictions was not substantially outweighed by unfair prejudice. The facts in U.S. v. Calderon, supra are not dissimilar from those here. In both cases, the testimony against the accused came from co-conspirators who had either entered into cooperation agreements providing for reduced sentences or who anticipated that their truthful testimony would bring about leniency in sentencing. Since the testimony of such witnesses here and in Calderon was subject to heavy attack as to believability, obviously in each case it is difficult to prove the negative that the government had no need to introduce evidence of the accused's prior drug activity to establish his intent. Calderon, 127 F.3d at 1332.

Defendant suggests that the two 1998 convictions are too remote to be admissible as 404(b) evidence. At the time of the trial in 2003, the 1998 convictions were five years old. Our holdings do not support this argument. U.S. v. Pollock, 926 F.2d 1044, 1047, 1048 (11th Cir. 1991) (holding a five-year old drug conviction is probative of a defendant's state of mind in a drug conspiracy case.) Calderon, 127 F.3d at 1332 (a six-year span between the prior convictions

18

and the conduct upon which the present charges are based does not render the earlier convictions too remote for proper consideration).

Defendant also argues that as one of the 1998 convictions involved a drug different than MDMA for which he is charged here, and as there is not a similarity between the extrinsic act and the charged offense, it was error to admit that evidence. To support his position, defendant relies principally on U.S. v. Young, 39 F.3d 1561 (11th Cir. 1994). In Young, the government introduced 404(b) evidence showing that the defendant was involved in illegal production of alcohol in an attempt to prove his intent to conspire to distribute marijuana. The court in Young found that alcohol is not a controlled substance and the illegality of its production is distinct both in fact and law from that involved in growing and selling marijuana. Accordingly, the court ruled that it was error to admit evidence of the prior illegal production of alcohol because it was not probative of an intent to conspire to possess and distribute marijuana. Young, 39 F.3d at 1573.

The facts in Young can be distinguished from those here. We have determined in this case that evidence of a prior distribution of a controlled substance is probative of intent to distribute another controlled substance. In Young, it was error to admit evidence of a non-controlled substance as it is not

19

probative of an intent to distribute a controlled substance.[8]

We conclude, therefore, that the district judge did not abuse his discretion in admitting the 404(b) evidence. All of the circumstances surrounding the extrinsic offenses, including prosecutorial need, overall similarity between the extrinsic acts and the charged offense as well as temporal remoteness lead to this conclusion. If in fact there was unfair prejudice, it was mitigated by the district judge's limiting instructions, both before the evidence was adduced and as a part of the final charge. In addition, the error, if any, was harmless as there was substantial other evidence to support the verdict. U.S. v. Chavez, 204 F.3d at 1317 quoting U.S. v. Hubert, 138 F.3d 912, 914 (11th Cir. 1998).

3.  The Apprendi and Blakely Challenge:

At sentencing, the district court violated the defendant's Sixth Amendment right to a trial by jury when, treating the Federal Sentencing Guidelines as mandatory, it enhanced his sentence based on facts that were neither admitted by the defendant nor found by the jury. Because the defendant has raised this issue for the first time on appeal, our review is for plain error only. "We have discretion to correct an error under the plain error standard where (1) an error occurred, (2)

---

[8] Nevertheless in Young we pointed to our holding in U.S. v. Diaz-Lizaraza, 981 F.2d 1216, 1224 (11th Cir 1993) (evidence of a defendant's arrest for possessing marijuana with intent to distribute was relevant to the issue of his intent to conspire to possess and distribute cocaine).

20

the error was plain, (3) the error affected substantial rights, and (4) the error seriously affects the fairness, integrity or public reputation of judicial proceedings." United States v. Duncan, 400 F.3d 1297, 1301 (11th Cir. 2005) (citing United States v. Olano, 507 U.S. 725, 732-36, 113 S. Ct. 1770, 1777-79, 123 L.Ed.2d 508 (1993)). There is no dispute that there was error in this case that was plain. U.S. v. Rodriguez, 398 F.3d 1291, (11th Cir. 2005), reh'g en banc denied, 406 F.3d 1261 (11th Cir. 2005), cert denied, Rodriguez v. U.S., 125 S.Ct. 2935 (2005).

This case turns on the third prong of the test, which in this circuit requires the defendants to show that "there is a reasonable probability of a different result if the guidelines had been applied in an advisory instead of binding fashion by the sentencing judge in this case." Rodriguez, 398 F.3d at 1301. "[I]f it is uncertain whether the error affected the result, if the effect is indeterminate, if we simply cannot tell from the appellate record, then the defendant loses." Id. at 1306. Although the Rodriguez standard is exacting, it does not require the defendant to persuade us that a lower sentence would more likely than not be the result of a remand, Rodriguez, 406 F.3d at 1275 (Carnes, J., concurring in the denial of rehearing en banc) (stating that the Rodriguez standard is "not a preponderance standard"); rather, a "reasonable probability" is simply "a probability 'sufficient to

21

undermine confidence in the outcome,'" id. at 1274 (quoting United States v. Dominguez Benitez, 542 U.S. 74, ___, 124 S.Ct. 2333, 2340, 159 L.Ed.2d 157 (2004)).

In this case, the defendant's mandatory guideline range was 135 to 168 months. The district judge sentenced him to 135 months.[9] After recognizing that the defendant was "locked into a position of receiving a sentence from 135 months to 168 months," the judge, operating under a mandatory guidelines system, stated that a 135 month sentence would be "more than adequate for the conduct and to deter any future conduct." Under this scenario, it appears there is a reasonable probability that the district judge would impose a merely adequate sentence.

The first sentence of the federal sentencing statute commands the district judge to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of the statute, such as "to provide just punishment for the offense" and "to afford adequate deterrents to criminal conduct." 18 U.S.C. § 3553(a) (emphasis added).

Under the new advisory-guidelines system, a more-than-adequate sentence

---

[9] "We agree with the First, Fourth, Fifth and Eighth Circuits that the fact that the district court sentenced the defendant to the bottom of the applicable guidelines range establishes only that the court felt that sentence was appropriate under the mandatory guidelines system. It does not establish a reasonable probability that the court would have imposed a lesser sentence under an advisory regime." United States v. Fields, 408 F.3d 1356, 1360-61 (11th Cir. 2005).

22

would conflict with § 3553(a)'s injunction against greater-than-necessary sentences. As a matter of logic and common sense, the judge's comment establishes at least a "reasonable probability of a different result if the guidelines had been applied in an advisory instead of binding fashion by the sentencing judge in this case," Rodriguez, 398 F.3d at 1301, if not a substantial likelihood. Because all that the defendant is required to create is a doubt sufficient to undermine our confidence in the outcome, we vacate his sentence and remand for a new sentencing hearing pursuant to the sentencing model set out in United States v. Booker, 543 U.S. ___, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005).[10]

4. Calculation of the Quantity of MDMA Attributable to Defendant:

Although defendant's point of error as to the method of calculation of the drug quantity attributable to the defendant is actually a part of his Apprendi-Blakely-Booker assignment of error we will treat it as a separate assignment for our discussion.

In calculating the total offense level pursuant to the Sentencing Guidelines,

---

[10]     In some cases a defendant may establish an effect on his substantial rights and yet still be unable to satisfy the fourth prong of the plain-error test. See, e.g., United states v. Gonzalez-Huerta, 403 F.3d 727, 736 (10th Cir. 2005); Rodriguez, 406 F.3d at 1294 n. 15 (Tjoflat, J., dissenting from the denial of rehearing en banc). But see Rodriguez, 406 F.3d at 1265-66 (Carnes, J., concurring in the denial of rehearing en banc). In this case, however, we deal with a sentence imposed in violation of the Constitution, and there is a reasonable probability that correction of the error would result in a lower sentence. Under these circumstances, the error affects the fairness, integrity, and public reputation of the criminal justice system.

23

the Probation Officer prepared a pre-sentence investigation report which began with a base offense level of 34. This was calculated on the basis of some evidence that indicated defendant was responsible for at least 30,000 tablets of MDMA. The dialogue between the court and counsel set out that each tablet weighed .206 grams with 3,000 tablets resulting in 6,180 grams. Pursuant to 2B1.1(C)(3) a level 34 is based on a calculation of 3,000 kilograms of marijuana, but less than 10,000 kilograms. 6,180 grams of MDMA converts to 3,090 kilograms of marijuana. (Tr. Vol 10, p. 10). During the discussion, counsel for the defendant objected to the conclusion that there were 3,000 pills of MDMA attributable to the defendant.

The evidence as to the quantity of the pills attributable to the defendant came principally from Bitton and Dermer. Defendant's counsel suggested that that testimony was totally unreliable. Dermer testified that his first contact with defendant was in January 2002 and he would buy a few pills at a time, but the level increased to 2,000 at the time of his arrest. He stated he would purchase MDMA pills from defendant every three to four weeks from January 2002 on. He estimated that during the period of January 2002 to April 30, 2003 he purchased approximately 30,000 pills from defendant.

Bitton testified similarly that he began an involvement with drug sales to defendant in January or February of 2002. The early transactions started with 500

24

pills per occurrence and increased, over time, from 2,300 to 2,700 pills per transaction. He stated there would be a transaction every couple of weeks but there were a couple of months in which there were no transactions prior to April 30th because of a "dry spell."

Following his arrest, defendant told Garrison, a narcotics detective, that he was involved in selling multi-thousands of pills.

In the colloquy between the district court and counsel, grand jury testimony of Dermer was also brought into play. In Dermer's grand jury testimony he indicated that he was buying perhaps 2,000 pills twice a month for 14 months, or a total of 56,000 MDMA pills. During the "dry spell" the total would only be reduced to 52,000 pills. Tr. Vol. 10, p. 12-16.

Although the testimony of Bitton and Dermer at trial and before the Grand Jury varied as to the quantities, it appeared there was sufficient evidence to support 30,000 pills attributable to defendant, which would result in a base offense level of 34. Counsel for the defendant argued that if there was just a 1,000 pill adjustment downward from the 30,000 pills the calculation would result in a base offense level of 32.

In concluding the discussions, the district court elected to accept defendant's argument, and determined there was sufficient evidence to support a

25

finding that there were 29,000 MDMA tablets accountable to defendant. The court then found that the base offense level was 32. As there were no other applicable provisions of the Sentencing Guidelines to be considered, 32 became the total offense level. With a total offense level of 32 and a criminal history category of II, the range of punishment as to imprisonment was 135-168 months as found by the district court.

Ordinarily, when reviewing a district court's drug quantity determination, the review is for clear error. U.S. v. Ryan, 289 F.3d 1339, 1347, 1348 (11th Cir. 2002), U.S. v. Zapata, 139 F.3d 1355, 1357 (11th Cir. 1998) "However, if a party fails to raise objections to an issue before the district court, this court should review this issue only for plain error." Id.

As stated, initially, defendant objected to the probation officer's finding in the presentence investigation report that the base offense level was 34 based on a quantity of 30,000 or more MDMA pills. Counsel successfully persuaded the district court to reduce the quantity by 1,000 pills, thereby making the base offense level a 32. As the district court granted defendant's request in making the calculation it would appear there was no error, clear or plain. Nonetheless, we will review for clear error.

Defendant's sole argument is that the testimony of the two witnesses on

which the district court based its findings was unreliable.

Ordinarily, a determination of credibility of a witness is made exclusively by the finders of fact. U.S. v. Mesa, 247 F.3d 1165, 1169 (11th Cir. 2001).

Here, the district court obviously found the testimony of Bitton and Dermer to be reliable as to the quantity of drugs involved and accordingly, we should not disturb that finding.[11]

5.      Calculation of Criminal History:

In the presentence investigation report, the probation officer calculated a criminal history category of II on the basis of two felony convictions previously referred to in discussing the admission of 404(b) evidence. The report revealed that on September 3, 1998 in the 17th Judicial Circuit Court in Broward County, Florida, No. 98-6645-CF-10A, defendant was convicted of possession of Cannabis, under Florida law. Defendant was arrested for this offense on April 1,1998. In calculating the criminal history category, one point was assessed for this offense.

Defendant was arrested on June 7, 1998 for a sale of MDMA pills to Officer Raphael as recounted earlier and for possession of MDNA, both felonies under

---

[11] It is somewhat disingenuous for defendant to argue that testimony concerning the quantity of drugs attributable to him was not credible when the district court granted defendant's request in determining the quantity.

Florida law. That case was filed also in the 17th Judicial Circuit for Broward County, Florida, Case No. 98-11428-CF-10A. In that case, defendant was also sentenced on September 3, 1998 and one point was assessed in calculating the criminal history category.[12]

At the time of sentencing, the trial judge accepted the probation officer's finding and determined that the criminal history category was II. No objection was made by the defendant as to that conclusion.

On appeal for the first time, defendant challenges this finding, urging that the two cases were related under U.S.S.G. § 4A1.2, n. 3, as they were consolidated for sentencing and not separated by an intervening arrest. Defendant suggests, therefore, that only one point should have been assessed and that defendant's criminal history category should have been a one (1), rather than two (2). Defendant's position is not accurate or persuasive.

Section 4A1.2, n. 3, provides that:

> "Related Cases. Prior sentences are not considered related if they were for offenses that were separated by an intervening arrest (i.e., the defendant is arrested for the first offense prior to committing the second offense). Otherwise, prior sentences are considered related if they resulted from offenses that (A) occurred on the same occasion, (B) were part of a single common scheme or plan, or (C) were consolidated for

---

[12] These convictions were substantiated by the filing of "U.S. Notice of Intent to use evidence of 'other crimes, wrongs, or acts' pursuant to Rule 404(b)" and "Information to establish prior convictions." The convictions themselves are not disputed.

28

trial or sentencing."

Here, defendant committed the first offense, to which he entered a plea of *nolo contendre*, and later committed the second offense to which he entered the same plea. Thus, they were separated by intervening arrests, one on April 1, 1998 and the other on June 7, 1998. In any event, the two sentences are not considered related because they were for separate offenses, were not part of a single common scheme or plan, and were not consolidated for trial or sentencing. The cases had different numbers and although the sentence for each occurred on the same date, there is nothing in the record to show that they were consolidated. It is unnecessary to give further attention to this assignment as counsel for defendant, during oral argument, admitted the two sentences were not consolidated for trial or at sentencing.

Accordingly, we conclude that the district court here did not commit clear error in concluding that defendant's 1998 felony convictions were separate and warranted the calculation of a criminal history category of II.

In the consideration of this issue, we have not overlooked defendant's Apprendi, Blakely and Booker argument that defendants' prior convictions must be found by the jury beyond a reasonable doubt, or admitted by the defendant.

In Almendarez-Torres v. U.S., 523 U.S. 224, 228, 118 S.Ct. 1219, 140

L.Ed.2d 350 (1998), the Supreme Court determined that the government is not required to allege in its indictment nor is it required to prove beyond a reasonable doubt that a defendant had prior convictions for a district court to use those convictions for purposes of enhancing a sentence. We refused to interpret the rationale of the Supreme Court in Apprendi as overruling its holding in Almendreaz-Torres. U.S. v. Marseille, 377 F.3d 1249, 1257 (11th Cir. 2004), cert. denied, 125 S.Ct. 637 (2004). As stated in Marseille, we concluded that Blakely "does not take such fact-finding out of the hands of the courts." Marseille, 377 F.3d at 1257-58, n. 14. [13]

We find nothing in Apprendi, Blakely, or Booker that overrules Almendreaz-Torres. Prior convictions may be considered in enhancing sentences. Thus, the finding of the district court here in determining that defendant's criminal history category was a Category II does not run afoul of Apprendi, Blakely, and Booker.

6.      Personal Money Judgment - Forfeiture:

After the jury verdict in this case, the district court, on motion of the

---

[13] For recent cases supporting our holding in Marseille, see U.S. v. Styles, 2005 WL 1586483 (11th Cir. July 7, 2005), U.S. v. Hurtado, 2005 WL 1367359 (11th Cir. June 10, 2005), U.S. v. Burge, 407 F.3d 1183, 1188 (11th Cir. May 2, 2005) U.S. v. Lewis, 129 Fed. Appx. 573 (11th Cir. April 29, 2003).

30

government, entered a personal money judgment and forfeiture against the defendant pursuant to 21 U.S.C. § 853(a)(1) and (2) in the sum of $174,000.

As asserted in his brief filed in this appeal, defendant stated:

"The court erred in imposing sentence under the Federal Sentencing Guidelines and imposing the forfeiture judgment in violation of Apprendi v. New Jersey and Blakely v. Washington."
App. brief, p. 49.

Other than the assignment of error in the caption, there is no argument in the brief concerning the forfeiture judgment. More than a heading is required to preserve an argument raised on appeal; further discussion is required. The issues must be plainly and unambiguously raised. See e.g., United States v. Jernigan, 341 F.3d 1273, 1284 n. 8 (11th Cir. 2003) (collecting cases). Although briefs are to be read liberally to determine the issues raised on appeal, see, e.g., Allstate Ins. Co. v. Swann, 27 F.3d 1539, 1542 (11th Cir. 1994), some discussion of the merits of the issue must be proffered, see, e.g., Greenbriar Ltd. v. City of Alabaster, 881 F.2d 1570, 1573 n. 6 (11th Cir. 1989). Accordingly, there is no need to address the issue as it has been waived. See, e.g., Marek v. Singletary, 62 F.3d 1295, 1298 n. 2 (11th Cir. 1995) ("Issues not clearly raised in the briefs are considered abandoned."); McFarlin v. Conseco Services, LLC, 381 F.3d 1251, 1263 (11th Cir. 2004) ("A party is not allowed to raise at oral argument a new issue for review.").

Accordingly, we **vacate** Neufeld's sentence and **remand** for re-sentencing consistent with <u>Booker</u>. In all other respects, the judgment of the district court is **AFFIRMED**.