[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
January 13, 2006
THOMAS K. KAHN
CLERK

_____

No. 05-11921
Non-Argument Calendar

_____

D. C. Docket No. 04-00189-CR-ORL-28-KRS

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ANGEL L. DAVILA-RODRIGUEZ,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(January 13, 2006)**

Before ANDERSON, BIRCH and FAY, Circuit Judges.

PER CURIAM:

Angel L. Davila-Rodriguez appeals his 180-month sentence for conspiracy to possess with intent to distribute and distribute one kilogram of heroin, in violation of 18 U.S.C. §§ 841(a)(1), (b)(1)(A) and 846. Davila-Rodriguez argues on appeal that the district court erred in sentencing him as a career offender, pursuant to U.S.S.G. § 4B1.1, based on its determination that a prior conviction(s) involved conduct that presented a serious risk of physical injury to another. He also contends for the first time on appeal that the district court's consideration of prior convictions in sentencing him violated his constitutional rights, in light of the Supreme Court's decisions in Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), and United States v. Booker, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005). For the reasons set forth more fully below, we affirm.

A federal grand jury returned an indictment, charging Davila-Rodriguez with the above-referenced offense. In pleading guilty, Davila-Rodriguez agreed that (1) the government could prove that the conspiracy involved one kilogram or more of heroin, (2) his minimum statutory sentence was ten years' imprisonment, (3) his maximum statutory sentence was life imprisonment, and (4) he might qualify as a career offender under the United States Sentencing Guidelines

("federal guidelines"). He, however, did not admit, and his indictment did not charge, either that he had prior convictions, or the nature of these convictions.

Davila-Rodriguez's presentence investigation report ("PSI") set his base offense level at 32, pursuant to U.S.S.G. § 2D1.1(c)(4), for a drug offense involving at least one kilogram, but less than three kilograms, of heroin. The probation officer also recommended that Davila-Rodriguez's offense level be enhanced to level 37, pursuant to U.S.S.G. § 4B1.1(b)(A), because he was a career criminal and he had a statutory maximum sentence of life imprisonment.[1] After Davila-Rodriguez's offense level was adjusted downward three levels for acceptance of responsibility, his total offense level was 34, his criminal history category was VI, and his resulting guideline range was 262 to 327 months' imprisonment.

Prior to sentencing, Davila-Rodriguez filed objections to his PSI, objecting to, among other things, the PSI's classification of him as a § 4B1.1 career offender. The probation officer responded that this career-offender classification was applicable because (1) Davila-Rodriguez was 29 years' old at the time he

---

[1] The PSI identified the predicate prior felony convictions for either a crime of violence or a controlled-substance offense on which it was relying in classifying Davila-Rodriguez as a career criminal as (1) a 1995 conviction in San Juan Superior Court, Puerto Rico, for carrying and bearing a loaded firearm without authorization; and (2) a 1996 conviction in the State of New York, for conspiracy to possess with intent to distribute heroin.

committed the instant offense of conviction; (2) the instant offense was a felony controlled-substance offense; and (3) he had prior felony convictions for (i) conspiracy to possess with intent to distribute heroin, and (ii) carrying a loaded concealed weapon without authorization.

On February 17, 2005, at sentencing, the court granted the government's motion for a downward departure, pursuant to U.S.S.G. § 5K1.1, based on Davila-Rodriguez's providing substantial assistance by agreeing to testify against a codefendant.  Next addressing the recommended § 4B1.1 career-offender enhancement, Davila-Rodriguez admitted that he had been convicted of multiple firearm offenses in Puerto Rico, but contended that none of the firearm offenses listed in his PSI qualified as "crimes of violence," as defined in U.S.S.G. § 4B1.2(a).  He also contended that his prior firearms offenses from Puerto Rico were inadmissible due to lack of notice, translation, fingerprints to establish identity, and factual details.  Without objection, the court continued sentencing to allow the government additional time to have these documents transcribed.

When sentencing reconvened, the government introduced certified, transcribed records from Puerto Rico.[2]  Davila-Rodriguez argued that, although this

_____

[2] These records from Puerto Rico specifically included (1) a complaint in Case No. KLA95G0199, charging him with a violation of Article 8 of the Puerto Rico Weapons Law, 25 P.R. Laws Ann. § 418 (repealed 2000), "which made it a felony to bear or carry a loaded firearm without a license"; (2) a complaint in Case No. KLA95G0263, charging him with a violation of

4

Court has concluded that carrying a concealed weapon, as opposed to merely possessing a weapon, is a "crime of violence" under § 4B1.2(a), his Article 7 conviction only was for carrying and bearing a revolver. The government responded that (1) the court only should look at the relevant statute in determining whether the offense at issue was a "crime of violence," (2) the relevant statute included an intent element and the requirement that the firearm be loaded, and (3) the court's inquiry should be whether it was an offense that presented a serious potential risk of physical injury. The court again continued sentencing to give the parties time to prepare sentencing memoranda addressing these § 4B1.1 arguments.

When sentencing reconvened for the fourth time,[3] the court, both orally and in a written sentencing order, overruled Davila-Rodriguez's objection to being classified as a career offender under § 4B1.1. In doing so, the court found that, despite the charging instruments that the government had introduced, showing a charge of violating Article 8 of the Puerto Rico Weapon's Law, Davila-Rodriguez

_____

Article 11 of the Puerto Rico Weapons Law, 25 P.R. Laws Ann. § 421, "which made it a felony to carry or possess any firearm from which the serial number has been defaced"; and (3) a sentencing document in the above-referenced cases, reflecting that he actually plead guilty to violations of Articles 7 and 11, 25 P.R. Laws Ann. §§ 417 and 421, and was sentenced to two years' imprisonment for each charge.

[3] Prior to this final sentencing hearing, the parties each submitted a sentencing memorandum, arguing why or why not the court should sentence Davila-Rodriguez as a career offender. Morever, the court continued sentencing for a third time, again to allow the parties additional time to prepare for arguments.

5

actually had been convicted in Case No. KLA95G0199, for a violation of Article 7 of the Puerto Rico Weapons Law, 25 P.R. Laws Ann § 417, for a felony of bearing or carrying a firearm without a license after having been convicted of certain violations. The court also found that Davila-Rodriguez had been convicted in Case No. KLA95G0263, for a violation of Article 11 of the Puerto Rico Weapons Law, 25 P.R. Laws Ann § 421, for bearing and carrying a firearm with a defaced serial number.

The court then explained that both of these prior convictions qualified as "crimes of violence," pursuant to § 4B1.2(a)(2), because they had involved conduct that had presented a serious potential risk of physical injury to another. Relying specifically on our decisions in United States v. Gilbert, 138 F.3d 1371 (11th Cir. 1998), and United States v. Hall, 77 F.3d 398 (11th Cir. 1996), the district court acknowledged that those cases involved concealment of a firearm, but reasoned that the Article 7 offense of carrying and transporting a firearm by a convicted felon, instead of merely possessing a firearm, was an active crime similar to concealment of a firearm, whereby the firearm was accessible for use on another person. The court also discussed that the Article 11 offense of carrying a firearm that had been altered to hide serial numbers (1) was distinguishable from situations in which there might be a legitimate reason for possessing a firearm, and

6

(2) targeted a specific firearm "deemed to be particularly dangerous and a substantial risk to the physical safety of human beings."

After the court verified that Davila-Rodriguez had no other objections to the PSI, it granted him a two-level § 3E1.1 reduction for acceptance of responsibility, the three-level § 5K1.1 downward departure for substantial assistance, and a one-level departure from his criminal history category for over-representation of criminal history, pursuant to U.S.S.G. § 4A1.3(b)(3). Davila-Rodriguez had a total offense level of 31, a criminal history category of V, and a resulting guideline range of 151 to 188 months' imprisonment. The court then sentenced Davila-Rodriguez to 180 months' imprisonment, 5 years' supervised release, and a $100 special assessment fee. In imposing this sentence, the court stated that it had (1) considered the sentencing factors in 18 U.S.C. § 3553(a), including Davila-Rodriguez's advisory guideline range; and (2) determined that a harsher sentence was warranted in the instant case because Davila-Rodriguez already had been sentenced for a drug offense in New York. Moreover, in its written sentencing order, the court explained as follows:

> [T]he sentence of 180 months would have been an appropriate
> sentence for this Defendant regardless of whether he had been
> qualified as a career offender pursuant to § 4B1.1. Thus, it is
> ultimately not critical whether both, one, or neither of the Puerto Rico
> convictions discussed above qualify as crimes of violence. The
> sentence would have been the same anyway.

7

Davila-Rodriguez is arguing on appeal that the court erred in classifying him as a career offender under § 4B1.1 because neither of his prior convictions under the Weapons Law of Puerto Rico constituted a "crime of violence," as defined in § 4B1.2(a)(2). He generally asserts that, (1) although the federal guidelines under which he was sentenced were only advisory, the court still had to calculate correctly his sentencing range; and (2) under the rule of lenity, the court must resolve any ambiguities in the application of the federal guidelines in his favor. He specifically contends that, applying the categorical approach to his unambiguous Article 7 conviction, it did not involve necessarily either criminal intent, or "conduct that presents a serious potential risk of physical injury to another."[4] He also asserts that, pursuant to the amended commentary for § 4B1.2, his mere possession of a defaced firearm was not a "crime of violence" because the firearm was not a sawed-off shotgun or rifle, a silencer, a bomb, or a machine gun.

Post-Booker, district courts, while not bound by the federal guidelines, must continue to consult the provisions of the federal guidelines and consider them in sentencing. United States v. Crawford, 407 F.3d 1174, 1178 (11th Cir. 2005). As Davila-Rodriguez contends, "[t]his consultation requirement, at a minimum,

---

[4] Davila-Rodriguez alternatively contends that, to the extent his Article 7 offense was ambiguous, the court could not look at the underlying facts of the conviction in the complaint because the complaint charged him with committing an Article 8 offense—an offense to which he did not plead guilty.

obliges the district court to calculate <u>correctly</u> the sentencing range prescribed by the [federal guidelines]." <u>See</u> <u>id.</u> (emphasis in original). "A misinterpretation of the [federal guidelines] by a district court effectively means that the district court has not properly consulted the [federal guidelines]." <u>Id.</u> at 1179 (quotation marks, citations, and punctuation omitted). We review questions of law arising under the federal guidelines <u>de novo</u>. <u>Id.</u> at 1178.

A defendant qualifies as a "career offender" under the federal guidelines if "(1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 4B1.1(a). In the instant case, the only § 4B1.1(a) element at issue is whether, in addition to a prior conviction for a controlled substance offense, Davila-Rodriguez had a prior conviction for a "crime of violence."

The federal guidelines define a "crime of violence" as "any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that--(1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or (2) . . . otherwise involves conduct that

9

presents a serious potential risk of physical injury to another." U.S.S.G. § 4B1.2(a). As the first application note to § 4B1.2 explains, "'[c]rimes of violence' includes murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses, robbery, arson, extortion, extortionate extension of credit, and burglary of a dwelling." U.S.S.G. § 4B1.2, comment. (n.1).[5] That application note further explains that: "[o]ther offenses are included as 'crimes of violence' if (A) that offense has as an element the use, attempted use, or threatened use of physical force against the person of another, or (B) the conduct set forth (i.e. expressly charged) in the count of which the defendant was convicted . . ., by its nature, presented a serious risk of physical injury to another." Id. Thus, we have explained:

> [U]nder U.S.S.G. § 4B1.2, there are two approaches for classifying an offense as a crime of violence. The first approach is to determine whether the use, attempted use or threatened use of physical force against another is an element of [the offense] . . . Alternatively, under the second approach, we must determine whether [the offense] involves conduct that, by its nature, presents a serious potential risk of physical injury to another.

United States v. Searcy, 418 F.3d 1193, 1196 (11th Cir. 2005).

---

[5] We treat the commentary in the federal guidelines as authoritative, unless it is plainly erroneous, is inconsistent with the regulation it interprets, or is contrary to the United States Constitution or federal law. See United States v. Torrealba, 339 F.3d 1238, 1242 (11th Cir. 2003) (citing Stinson v. United States, 508 U.S. 36, 45, 113 S.Ct. 1913, 1919, 123 L.Ed.2d 598 (1993)).

10

In the instant case, the government did not assert that the attempted use or threatened use of physical force is an element of either of Davila-Rodriguez's relevant Puerto Rico convictions. Instead, it contended that, similar to the crime of carrying a concealed weapon, the offenses involve "conduct that, by its nature, presents a serious potential risk of physical injury to another," as defined in § 4B1.2(a)(2). Article 7 of the Puerto Rican Weapons Act provides as follows:

> Any person who bears, carries, or transports any pistol, revolver or other firearm without having a license therefor issued as hereinafter provided, shall be guilty of a misdemeanor and, if previously convicted of any violation of this chapter or of any of the offenses specified in § 427 of this title, or uses the weapons in the commission of any such offenses, shall be guilty of a felony.

Article 7 of the Puerto Rico Weapons Act, 25 P.R. Laws Ann. § 417. Furthermore, under Article 11 of this Act:

> Any person shall be guilty of a felony who: (a) Willfully removes, defaces, covers, alters, or destroys the serial number of any firearm or the name of the owner thereof; or who (b) knowingly buys, sells, receives, alienates, transfers, carries, or has in his possession any firearm from which the serial number or name of the owner thereof has been removed, defaced, altered, or destroyed . . ..

Article 11 of the Puerto Rico Weapons Act, 25 P.R. Laws Ann. § 421.

We have not addressed whether either of these Puerto Rico offenses are "crimes of violence" under § 4B1.2(a)(2). In an analogous case, however, we concluded that carrying a concealed firearm under Florida law is a "crime of

11

violence" under § 4B1.2(a)(2).  See Gilbert, 138 F.3d at 1372; see also Hall, 77

F.3d at 401-02 (concluding that carrying a concealed weapon is a "violent felony"

for purposes of the Armed Career Criminal Act, 18 U.S.C. § 924(e), because it

"extends beyond mere possession—the person has taken the extra step of having

the weapon immediately accessible for use on another").[6]

On the other hand, we recently determined that mere possession of a firearm

by a felon, in violation of 18 U.S.C. § 922(g)(1), is not a "crime of violence"

within the meaning of 18 U.S.C. § 3156(a)(4).[7]  See United States v. Johnson, 399

F.3d 1297, 1301-02 (11th Cir. 2005).  In doing so, we discussed as follows:

> Although possession of a firearm by a felon, like drunk driving, may
> in some cases involve conduct that creates a heightened risk of injury
> or violence, it cannot be said that the offense of simple possession of a
> firearm 'naturally involve[s] a person acting in disregard of the risk
> that physical force might be used against another in committing an
> offense.' [] It is not an active crime, like burglary, which necessarily
> creates a substantial risk of violence.  Thus, felon in possession of a
> firearm under § 922(g)(1) is simply not the sort of violent, active
> crime that may be properly characterized, categorically, as a 'crime of
> violence.'

See id. at 1302 (emphasis in original).

_____

[6] We have concluded that the definition in § 4B1.2(a) of a "crime of violence" is
"virtually identical" to § 924(e)'s definition of "violent felony."  See United States v. Rainey,
362 F.3d 733, 734 (11th Cir.), cert. denied, 541 U.S. 1081 (2004).

[7] Section 3156(a)(4), which contains similar language as § 4B1.2(a), defines "crime of
violence" in the context of, among other things, whether a defendant must be detained after
conviction, but before sentencing, pursuant to 18 U.S.C. § 3143(a)(2).  See 18 U.S.C.
§§ 3143(a)(2), 3156(a)(4).

Moreover, as Davila-Rodriguez contends, following Amendment 674, a 2004 amendment, application note 1 of § 4B1.2 now reads as follows: "'Crime of violence' does not include the offense of unlawful possession of a firearm by a felon, unless the possession was of a firearm described in 26 U.S.C. § 5845(a)." See U.S.S.G. § 4B1.2(b), comment. (n.1) (2004).[8] Section 5845(a) states that a "firearm" includes:

> (1) a shotgun having a barrel or barrels if less than 18 inches in length; (2) a weapon made from a shotgun if such weapon as modified has an overall length of less than 26 inches or a barrel or barrels of less than 18 inches in length; (3) a rifle having a barrel or barrels of less than 16 inches in length; (4) a weapon made from a rifle if such weapon as modified has an overall length of less than 26 inches or a barrel or barrels of less than 16 inches in length; (5) any other weapon, as defined in subsection (e); (6) a machinegun; (7) any silencer []; and (8) a destructive device.

See 26 U.S.C. § 5845(a).

Here, Davila-Rodriguez's prior convictions involved "carrying and bearing," instead of merely possessing a firearm. On the other hand, none of the exceptions listed in 28 U.S.C. § 5845(a) include either the shotgun or pistol at issue in Davila-

---

[8] Prior to Amendment 674, application note 1 merely instructed that a "'[c]rime of violence' does not include the offense of unlawful possession of a firearm by a felon." See U.S.S.G. § 4B1.2(b), comment. (n.1) (2003). Thus, pursuant to Amendment 674, felons that possess those firearms described in § 5845(a) now do not fall within the rule that excludes felons in possession offenses from the definition of "crime of violence." See id. In amending this commentary, the Sentencing Commission explained that "Congress has determined that those firearms described in [§ 5845(a)] are inherently dangerous and when possessed unlawfully, serve only violent purposes." See U.S. Sentencing Guidelines Manual app. C, Amend. 674 (2004).

Rodriguez's firearm convictions, or the fact that one of the firearms was "defaced."

See generally 26 U.S.C. § 5845(a).[9] Regardless, we need not determine whether

either carrying and bearing a firearm by a convicted felon under Article 7, or

carrying and bearing a defaced weapon until Article 11, is a "crime of violence"

because, even if the court erred in deciding this issue, any error was harmless.

Sentencing errors are reviewed for harmless error. See United States v.

Magluta, 418 F.3d 1166, 1183-84 (11th Cir. 2005). In the Booker context, we

have explained as follows:

> [A] "non-constitutional error is harmless if, viewing the proceedings
> in their entirety, a court determines that the error did not affect the
> sentence, or had but very slight effect. If one can say with fair
> assurance . . . that the sentence was not substantially swayed by the
> error, the sentence is due to be affirmed even though there was error.

---

[9] Although we may depart from the categorical approach and look behind a state conviction in federal sentencing to a limited extent in the situation where the judgment of conviction and the statute are ambiguous, Shephard v. United States, ___ U.S. ___, 125 S.Ct. 1254, 1258, 1263, 161 L.Ed.2d 205 (2005), the government has not explained either why the relevant statutes are ambiguous, or how such a review would produce a different result. Indeed, as Davila-Rodriguez contends, his charging documents for his Article 7 conviction are not relevant because he originally was charged with committing an Article 8 violation. See United States v. Spell, 44 F.3d 936, 940 (11th Cir. 1995) (holding that a district court may not rely on a charging document without first establishing that the crime charged was the same crime for which the defendant was convicted). Furthermore, because the statutes are not ambiguous, the rule of lenity is not applicable. See United States v. Camacho-Ibarquen, 410 F.3d 1307, 1315 (11th Cir.), cert. denied, 126 S.Ct. 457 (2005) (holding that the rule of lenity applies only if the provision being construed is still ambiguous after the application of normal rules of construction).

14

United States v. Mathenia, 409 F.3d 1289, 1292 (11th Cir. 2005) (internal quotations and marks omitted). Moreover, the government has the burden of showing that the error was harmless. Id.

In Mathenia, we noted that, although the district court violated Booker by treating the federal guidelines as mandatory, the sentencing judge stated that "I would nonetheless consider the guidelines as–for their persuasive value or as advisory, and the sentence I would impose would be the same." See id. We determined that, because the judge stated that the defendant's sentence would be the same, we knew that the error did not affect the defendant's sentence. See id. at 1292. We concluded, therefore, that the government had met its burden under harmless-error review. See id. at 1292-93.

Similarly, in Magluta, we determined that we need not decide whether the district court erred in calculating Magluta's offense level using an amount of money that was greater than the figure that the jury found in its special forfeiture verdict because the district court stated that, if we determined that the district court's reasoning in calculating the defendant's guideline range was in error, the district court would have employed an upward departure to reach the same result. See Magluta, 418 F.3d at 1183-84. We concluded that, because district courts are better situated to determine if a case is outside the heartland of cases, and because

15

an upward departure would have reviewed only for an abuse of discretion, any two-point error in the defendant's offense level was harmless. See id. at 1184-85.

Similar to the facts in Mathenia and Magluta, it is clear from the record in the instant case that any error did not affect Davila-Rodriguez's sentence. The district court explicitly stated in its written sentencing order that the 180-month sentence that it imposed "would have been the appropriate sentence for this Defendant regardless of whether he had been qualified as a career offender pursuant to § 4B1.1," and that "[t]he sentence would have been the same anyway." Moreover, the court explained at sentencing that it had (1) considered the sentencing factors in § 3553(a), and (2) determined that a harsher sentence was warranted because Davila-Rodriguez previously had committed a drug offense. Indeed, post-Booker, although the guidelines "remain an essential consideration in the imposition of federal sentences, albeit along with the factors in § 3553(a)," after a court has calculated a defendant's guideline range, it "may impose a more severe or more lenient sentence," which we review only for reasonableness. See Crawford, 407 F.3d at 1178-79. Thus, we conclude that we need not decide whether the district court erred in sentencing Davila-Rodriguez as a career offender because the government met its burden of showing that any error was harmless.

As discussed above, Davila-Rodriguez also is arguing, for the first time on appeal, that the court's consideration of his prior convictions in sentencing him as a career offender was in violation of the Supreme Court's decisions in Blakely and Booker. Davila-Rodriguez concedes that we have determined that the Supreme Court's holding in Almendarez-Torres v. United States, 523 U.S. 224, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998), that is, that the government is not required to charge prior convictions in an indictment, remains the law unless and until the Supreme Court overrules it. He contends, however, that Almendarez-Torres has been called into doubt by subsequent opinions by members of the Supreme Court in Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000),[10] and its progeny, and that this is an appropriate case to reconsider the continued viability of Almendarez-Torres.

Because Davila-Rodriguez failed to raise his constitutional challenges in the district court, we review them only for plain error. See United States v. Rodriguez, 398 F.3d 1291, 1298 (11th Cir.) (applying plain-error review to a newly-raised Blakely/Booker claim), cert. denied, 125 S.Ct. 2935 (2005). Under plain-error review, an appellate court may not correct an error that the defendant failed to raise

---

[10] In Apprendi, the Supreme Court held that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Apprendi, 530 U.S. at 490, 120 S.Ct. at 2362-63.

17

in the district court unless there is "'(1) error, (2) that is plain, and (3) that affects substantial rights.'" Id. (quotation omitted). "If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." Id.

We have concluded that the Supreme Court, in Booker, rejected the argument that, even when the federal guidelines are applied in an advisory fashion, "the Sixth Amendment right to a jury trial prohibits the sentencing court from making factual determinations that go beyond a defendant's admissions." United States v. Chau, 426 F.3d 1318, 1323-24 (11th Cir. 2005). Here, because Davila-Rodriguez was sentenced post-Booker, with the court treating the federal guidelines as advisory, no Sixth Amendment violation occurred.

Regardless, even if Davila-Rodriguez had not been sentenced under an advisory guideline scheme, he failed to show constitutional error under Blakely or Booker. "In Almendarez-Torres v. United States, the Supreme Court held that the government need not allege in its indictment and need not prove beyond a reasonable doubt that a defendant had prior convictions for a district court to use those convictions for purposes of enhancing a sentence." United States v. Marseille, 377 F.3d 1249, 1257 (11th Cir.), cert. denied, 125 S.Ct. 637 (2004).

18

After the Supreme Court's decisions in Apprendi and Blakely, we held that Almendarez-Torres remains good law. See Marseille, 377 F.3d at 1257-58 n.14. Moreover, prior to sentencing in the instant case, the Supreme Court, in Booker, reaffirmed its holding in Apprendi that "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." Booker, 543 U.S. at ___, 125 S.Ct. at 756. Again, after Booker, we held that the decision in Almendarez-Torres was "left undisturbed by Apprendi, Blakely, and Booker," and that "a district court does not err by relying on prior convictions to enhance a defendant's sentence." United States v. Shelton, 400 F.3d 1325, 1329 (11th Cir. 2005).

Also prior to sentencing, a plurality of the Supreme Court in Shephard explained that, while a dispute over whether a burglary was a "violent felony" for purposes of § 924(e) enhancement could be "described as a fact about a prior conviction, it [was] too far removed from the conclusive significance of a prior judicial record, and too much like the findings subject to Jones [v. United States, 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999)] and Apprendi, to say that Almendarez-Torres clearly authorizes a judge to resolve the dispute." Shephard,

19

___ U.S. at ___, 125 S.Ct. at 1262. However, after the Supreme Court decided Shepard, we held, under plain-error review, that a district court's application of U.S.S.G. § 2L1.2(b)(1)(A)(ii) did not violate a defendant's Sixth Amendment rights. Camacho-Ibarquen, 410 F.3d at 315-16. In a footnote, we noted that Almendarez-Torres must be followed because, while Shepard "may arguably cast doubt on the future prospects of Almendarez-Torres's holding regarding prior convictions, the Supreme Court has not explicitly overruled Almendarez-Torres." Id. at 1316 n.3. Most recently, we reiterated in United States v. Cantellano, No. 05-11143 (11th Cir. Nov. 15, 2005), that the holding in Almendarez-Torres remains undisturbed. Id., slip op. at 467.

Accordingly, insofar as the district court's enhancement of Davila-Rodriguez's sentence as a career offender under § 4B1.1 involved determinations that he had prior convictions, these determinations did not implicate the Apprendi/Blakely/Booker line of cases. Moreover, to the extent that Davila-Rodriguez's argument can be construed as asserting that Almendarez-Torres is not applicable because the government had to show that his prior convictions, in addition to existing, were "crimes of violence," we also have rejected this argument. See United States v. Glover, No. 04-16745, manuscript op. at 9 (11th Cir. Nov. 29, 2005) (holding that, "whether a previous conviction is a 'crime of

20

violence' is a question of law, not of fact, as it must be determined by interpreting [§ 4B1.2]"); see also United States v. Gallegos-Aguero, 409 F.3d 1274, 1277 (11th Cir. 2005) (holding that the defendant's argument that the Sixth Amendment requires that a jury, not a judge, must determine whether his prior conviction is within the category of offenses specified in § 2L1.2(b)(1)(A)(vii) was without merit). Thus, no constitutional error, plain or otherwise, occurred.

Accordingly, we conclude that the district court did not err in sentencing Davila-Rodriguez as a career offender under § 4B1.1. Moreover, the district court did not err, plainly or otherwise, in considering Davila-Rodriguez's prior convictions in sentencing him under an advisory-guideline scheme. We, therefore, affirm Davila-Rodriguez's sentence.

**AFFIRMED.**