[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
March 23, 2006
THOMAS K. KAHN
CLERK

_____

No. 05-10081

_____

D. C. Docket No. 04-20336-CR-JEM

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JOHNNY JACKSON,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(March 23, 2006)**

Before BIRCH, MARCUS, Circuit Judges, and MILLS[*], District Judge.

PER CURIAM:

_____
[*]Honorable Richard Mills, United States District Judge for the Central District of Illinois, sitting by designation.

Johnny Jackson appeals his 151-month sentence for importation and possession with intent to distribute at least 400 grams of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 952(a). At his plea colloquy, Jackson explicitly waived any rights under Blakely v. Washington, 542 U.S. 296, 124 S. Ct. 2531 (2004), and he later withdrew his Blakely objection to the presentence investigation report ("PSI") at sentencing. On appeal, he (1) challenges his sentence under United States v. Booker, 543 U.S. 220, 125 S. Ct. 738 (2005), and (2) raises a Fifth Amendment objection to the enhancement of his sentence based on prior convictions not alleged in the indictment. We AFFIRM.

## I. BACKGROUND

Jackson was indicted for importing at least 400 grams of cocaine into the United States, in violation of 21 U.S.C. § 952(a) (Count 1); and possession with intent to distribute at least 400 grams of cocaine, in violation of 21 U.S.C. § 841(a)(1) (Count 2). At the plea colloquy, the district court asked Jackson, "You understand you have a right to have a jury decide certain factors in sentencing you pursuant to the decision of United States vs. Blakely?" R2 at 6. Jackson replied, "Yes, sir." Id. The district court later inquired, "You have already told me that you and your attorney discussed the Blakely decision. Do you understand that it is my intention to use the sentencing guidelines to determine your sentence?" Id. at

2

8. Jackson responded, "Yes, sir." Id. The district court continued, "Unless I'm told by a court that I'm not supposed to, by a superior court." Id. Jackson pled guilty to both counts of the indictment.

The probation officer prepared a PSI, which assigned Jackson an adjusted offense level of 29 based on the grouping of his two counts and his career offender status due to at least two prior violent or drug related felony convictions. She calculated Jackson's criminal history category as VI, yielding a Guidelines range of 151to188 months of imprisonment. Jackson filed written objections to the PSI in which he argued that applying a career offender enhancement violated the Fifth and Sixth Amendments as well as Blakely.

At sentencing, Jackson conceded that, due to his waiver of certain rights at the plea colloquy, "[t]he only thing that's left is the failure of the indictment to allege the prior convictions that constitute the career offender status." R3 at 3. The government responded that we had resolved the issue and that the pending cases before the Supreme Court did not deal with the career offender aspect. Jackson stated, "We had contemplated a challenge to the constitutionality of the guidelines as a whole. But in light of the Court's imposition of an alternate sentence there wouldn't be any practical difference in the long run, so we are withdrawing that objection." Id. at 5. The district court overruled Jackson's

objection. With regard to the length of Jackson's Guidelines range, the district court stated, "It is an incredible amount of time. I mean some of these sentences are incredible. And maybe if the first time [Jackson] had gotten in trouble he had done some serious jail time he would have realized that there is a price to pay for breaking the law." Id. at 7. The district court then sentenced Jackson to 151 months of imprisonment, three years of supervised release, and a $3,000 fine. After the pronouncement of sentence, Jackson renewed his objection that the career offender enhancement was not contained in the indictment. The district court again overruled the objection. There was no alternative sentence imposed.

## II. DISCUSSION

A. Booker Challenges

Jackson argues that Booker, which came down after his sentence, must be applied to this case because he properly preserved an objection below. Booker held that the Sentencing Guidelines were subject to the jury trial requirements of the Sixth Amendment and struck down the statutory provisions that made the Guidelines mandatory. 543 U.S. at 244, 259, 125 S. Ct. at 756, 764. Jackson asserts that he did not waive his Blakely, or Booker, challenges below because a waiver must be knowing and intelligent, and he could not have predicted the result in Booker at the time of his plea. There are two potential challenges under

4

Booker: constitutional and statutory.  United States v. Gustama, 156 F. App'x 214, 217 (11th Cir. 2005) (per curiam).  We address them in turn.

1.  Constitutional Challenge

The Supreme Court has explained that a "waiver is the intentional relinquishment or abandonment of a known right."  United States v. Olano, 507 U.S. 725, 733, 113 S. Ct. 1770, 1777 (1993) (quotations omitted).  Waiver differs from forfeiture, which is merely the failure to make a timely assertion of a right. Id.  Unlike forfeiture, which permits review for plain error, waiver extinguishes appellate review because there is technically no "error" to correct.  See id. at 732-33, 113 S. Ct. at 1777.  Waiver or withdrawal of an objection below renders plain error review of that issue on appeal inapplicable. See, e.g., United States v. Masters, 118 F.3d 1524, 1526 (11th Cir. 1997) (per curiam).  However, any ambiguities in a plea agreement must be construed against the government.  United States v. Jefferies, 908 F.2d 1520, 1523 (11th Cir. 1990).

Here, Jackson waived his constitutional challenge to the Guidelines by waiving his rights at the plea colloquy and withdrawing his objection at sentencing. This waiver was clear and unambiguous with regard to his then-alleged constitutional right to have a jury decide certain factors in sentencing consistent with Blakely.  See R2 at 6.  The district judge went to great lengths, on several

5

different occasions, to explain to Jackson his Sixth Amendment rights. In reading the entire plea colloquy, we do not conclude that the waiver was solely conditional on the imposition of an alternative sentence, as evidenced by Jackson's failure to object, after sentencing, to the district court's refusal to impose such sentence. Thus, we do not address this issue.

2. Statutory Challenge

We have ruled that "Booker claims are not limited to constitutional objections." Gustama, 156 F. App'x at 217 (citing United States v. Shelton, 400 F.3d 1325, 1331 (11th Cir. 2005)). Statutory error under Booker exists when "the district court misapplies the Guidelines by considering them as binding as opposed to advisory." Shelton, 400 F.3d at 1331. As noted before, plea agreements are construed against the government. Gustama, 156 F. App'x at 217. Thus, if the plea agreement does not clearly state that the defendant cannot challenge the sentence on statutory grounds, the defendant may raise this challenge on appeal. Id.

If the issue was properly raised in the district court, we review the defendant's statutory "Booker claim on appeal de novo, but reverse only for harmful error." Id. If the issue was not properly raised in the district court, we review for plain error. United States v. Rodriguez, 398 F.3d 1291, 1298 (11th

6

Cir.), cert. denied, __ U.S. __, 125 S. Ct. 2935 (2005).  We "may not correct an error the defendant failed to raise in the district court unless there is: (1) error, (2) that is plain, and (3) that affects substantial rights . . . .  If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings."  Id. (citation and quotations omitted).

Here, because the plea colloquy did not specifically mention the waiver of any statutory challenge to the Guidelines, and because the outcome in Booker was uncertain, i.e., that the Supreme Court would render the Guidelines advisory, as opposed to striking it down in its entirety, we conclude that Jackson did not make a knowing and intelligent waiver of this particular challenge.  However, this objection was not made before the district court.  Thus, we review for plain error.

We believe, and the government concedes, that there is plain error because the Guidelines were applied in a mandatory fashion.  Thus, we look to the third prong in plain error review and "ask whether there is a reasonable probability of a different result if the guidelines had been applied in an advisory instead of binding fashion by the sentencing judge in this case."  United States v. Dacus, 408 F.3d 686, 689 (11th Cir. 2005) (per curiam) (quotations omitted).  Moreover, "in plain-error review, the defendant bears the burden of persuasion with respect to

7

prejudice or the effect on substantial rights." United States v. Monroe, 353 F.3d 1346, 1352 (11th Cir.2003). "[I]f it is equally plausible that the error worked in favor of the defense, the defendant loses; if the effect of the error is uncertain so that we do not know which, if either, side it helped the defendant loses. Where errors could have cut either way and uncertainty exists, the burden is the decisive factor in the third prong of the plain error test, and the burden is on the defendant." Rodriguez, 398 F.3d at 1300; see also United States v. Wood, 430 F.3d 1323, 1326 (11th Cir. 2005) (per curiam) (holding that a sentence at the bottom of the mandatory Guidelines range does not show that the sentence would have been lower under an advisory Guidelines scheme).

Notwithstanding the sympathetic comments regarding the length of Jackson's sentence, the district court's statements in this case are at best equivocal on whether it would have imposed the same sentence if the Guidelines had not been mandatory. The court stated that there was a price to be paid for breaking the law and noted Jackson's extensive criminal history. Moreover, the court did not provide, contrary to Jackson's wishes, an alternative sentence, which might have indicated displeasure with the sentence that was imposed. The burden is on Jackson to show a reasonable probability that his sentence would be different under an advisory scheme. Based on the ambiguity in the record, we conclude that

8

Jackson has not met this burden.

B.  Fifth Amendment Challenge to Sentencing Enhancement

Jackson argues that the district court violated the Fifth Amendment when it enhanced his sentence for convictions not alleged in his indictment.  He contends that sentencing based on unindicted facts constitutes a constructive amendment of the indictment which is per se reversible error.  He concludes, in light of Apprendi and Blakely, that Almendarez-Torres v. United States, 523 U.S. 224, 118 S. Ct. 1219 (1998), is no longer good law and that his sentence should be vacated as a violation of the Fifth Amendment.  He further cites United States v. Cotton, 535 U.S. 625, 122 S. Ct. 1781 (2002), for the proposition that a defendant has a Fifth Amendment right to have all facts that increase the recommended sentence under the Guidelines be found by the grand jury and charged in the indictment.

In his objections to the PSI, Jackson specifically objected to the career offender enhancement pursuant to Blakely, Apprendi, and the Fifth and Sixth Amendments.  Before the district court, Jackson reiterated his constitutional objection to the enhancement.  On appeal, Jackson makes no reference to his Sixth Amendment argument, as his brief only addresses his Fifth Amendment objection to the career offender enhancement.  Therefore, we will only address this latter objection, which was properly raised below.

9

We review the constitutional issue de novo, but will reverse only for a harmful error. United States v. Paz, 405 F.3d 946, 948 (11th Cir. 2005) (per curiam). Constitutional errors are harmless when the government can show, "beyond a reasonable doubt, that the error did not contribute to the defendant's ultimate sentence." United States v. Mathenia, 409 F.3d 1289, 1291-92 (11th Cir. 2005) (per curiam).

"In Almendarez-Torres v. United States, the Supreme Court held that the government need not allege in its indictment and need not prove beyond a reasonable doubt that a defendant had prior convictions for a district court to use those convictions for purposes of enhancing a sentence." United States v. Marseille, 377 F.3d 1249, 1257 (11th Cir.), cert. denied, 543 U.S. 1013, 125 S. Ct. 637 (2004). In Apprendi v. New Jersey, 530 U.S. 466, 489-90, 120 S. Ct. 2348, 2362-63 (2000), the Supreme Court declined to revisit Almendarez-Torres and held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." In Marseille, we refused to interpret the Supreme Court's rationale in Apprendi as overruling the prior Supreme Court decision in Almendarez-Torres. Marseille, 377 F.3d at 1257. We further concluded that Blakely "does not take such fact-finding out of the hands of

10

the courts." Id. at 1257-58 n.14. In Booker, the Supreme Court concluded that its holding in Blakely applied to the Sentencing Guidelines, and it reaffirmed its holding in Apprendi: "Any fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." Booker, 543 U.S. at 244, 125 S. Ct. at 756.

We have recently clarified that the Supreme Court's decision in Almendarez-Torres "was left undisturbed by Apprendi, Blakely, and Booker." Shelton, 400 F.3d at 1329. We noted that while recent decisions may arguably cast doubt on the future prospects of Almendarez-Torres, the Supreme Court has not explicitly overruled Almendarez-Torres and, as a result, Almendarez-Torres is still good law. United States v. Camacho-Ibarquen, 410 F.3d 1307, 1315-16 & n.3 (11th Cir.2005) (per curiam). "In sum, under the Supreme Court's recent precedents neither the Fifth Amendment nor the Sixth Amendment prevented the district court from finding the fact of [the defendant's] prior convictions, or using them to designate him a . . . career offender." United States v. Gibson, 434 F.3d 1234, 1246 (11th Cir. 2006).

For the aforementioned reasons, the district court did not err by enhancing Jackson's sentence based on prior convictions not alleged in the indictment.

11

Almendarez-Torres remains good law after Booker and does not require that prior convictions used to enhance a sentence be alleged in the indictment.

## III.  CONCLUSION

Jackson challenges his sentence under Booker and raises a Fifth Amendment challenge to the enhancement of his sentence.  With regard to his Booker challenges, we decline to address his constitutional challenge because Jackson waived it below, and we conclude that his statutory challenge fails on appeal.  We further conclude that the district court did not err by enhancing Jackson's sentence based on prior convictions not alleged in the indictment.  **AFFIRMED.**