[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 03-12961

_____

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
July 21, 2004
THOMAS K. KAHN
CLERK

D. C. Docket No. 02-20898-CR-DMM

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

EMMANUEL MARSEILLE,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(July 21, 2004)**

Before BLACK, BARKETT and MAGILL[*], Circuit Judges.

MAGILL, Circuit Judge:

    Emmanuel Marseille appeals his 210-month sentence for possessing

---

[*]Honorable Frank J. Magill, United States Circuit Judge for the Eighth Circuit, sitting by designation.

ammunition as a convicted felon and his 120-month sentence for threatening to retaliate by force against a person who gave information to a federal law enforcement officer. Marseille argues that the district court mistakenly classified him as a career offender under § 4B1.1 of the United States Sentencing Guidelines ("USSG")[1] and, as a result, determined that his criminal history category was VI rather than V. Marseille also argues that the district court improperly enhanced his sentence based on three prior felony convictions that were not charged in the indictment. We affirm.

## I.

This case concerns the treatment, under the Sentencing Guidelines, of a defendant who pled guilty to possessing ammunition as a convicted felon—a violation of 18 U.S.C. § 922(g)(1)—and threatening to retaliate against a confidential informant—a violation of 18 U.S.C. § 1513(b)(2). The government sought to enhance Marseille's sentence for possessing ammunition under 18 U.S.C. § 924(e) on the basis of his four previous convictions.[2] Based on the district court's determination that Marseille is a career offender under USSG §

---

[1] Citations to the Guidelines, unless otherwise noted, are to the 2002 version, which is the version that was in effect at the time of Marseille's sentencing.

[2] Marseille was previously convicted of (1) attempted murder and carrying a concealed firearm, (2) burglary with a battery, (3) possessing cocaine with intent to sell it, and (4) possessing cocaine with intent to sell it.

4B1.1 and an armed career criminal under USSG § 4B1.4(a), the district court sentenced Marseille to 210 months in prison on the possession charge and 120 months in prison on the retaliation charge. The sentences are running concurrently.

Marseille's troubles began when federal agents in the Bureau of Alcohol, Tobacco and Firearms ("ATF") came to suspect his involvement in a home-invasion burglary that resulted in a homicide. As part of its investigation, the ATF sent a confidential informant ("CI") to infiltrate Marseille's band of brigands. The CI posed as a plumber and expressed interest in obtaining firearms from Marseille. Subsequently, the CI made several visits to Marseille's residence, where he observed weapons and transactions in illegal narcotics. At some point during these visits, Marseille told the CI that he and his band carried out home-invasion burglaries. He told the CI that he could "hook him up" with weapons and tools if the CI was interested in joining the band. This offer opened the door for the CI to set Marseille up. On May 22, 2002, the CI told Marseille of a burglary job his brother had proposed, and arranged a meeting between the two for the next day. On May 23, the CI took Marseille to a meeting with an ATF agent (posing as the CI's brother) where they discussed tentative plans for a burglary job.

Two weeks later, on June 10, Marseille called the CI and asked him to drop

by his house to do some plumbing work. The CI arrived at Marseille's house on June 11. Once there, two unknown men accosted him, questioned whether he was an informant, and threatened his life repeatedly. The CI endured harrowing treatment for roughly an hour without cracking. In the end, the men told the CI he was free to go and that Marseille would contact him later in the day. Three hours later, Marseille called the CI and told him he "had passed his test." The two arranged to meet the next day, but the CI later backed out of the meeting.

On June 20, ATF agents executed a search warrant for Marseille's residence. The agents did not discover narcotics or firearms, but did discover nineteen rounds of Remington 9-millimeter ammunition. Based on this discovery and the knowledge that Marseille had prior felony convictions, the agents obtained a warrant for Marseille's arrest.

Four days later, Marseille called the CI and threatened him. He told the CI that he knew he was working for the authorities and had set him up. He said that the police should be protecting him because "otherwise, I'll shoot." The CI subsequently went into hiding. Marseille also fled when he learned that the ATF had obtained an arrest warrant.

On October 11, 2002, ATF agents located and arrested Marseille. Two weeks later, a federal grand jury returned a five-count indictment against him. On

January 13, 2003, Marseille pled guilty to the two counts discussed above—counts IV and V of the indictment. The district court held a sentencing hearing on May 19, 2003, where it adopted the Presentencing Investigation Report ("PSR") and sentenced Marseille to 210 months' imprisonment on the ammunition possession charge and 120 months' imprisonment—to run concurrently—on the witness threatening charge. Marseille objected to the PSR only on the bases that it referred to prior convictions the government had not alleged in the indictment and that it counted juvenile convictions as prior convictions.[3]

The district court, following the approach taken in the PSR, grouped Marseille's two offenses together under USSG § 3D1.2(c) for the purpose of assigning him an offense level. Subsection (c) provides for grouping "[w]hen one of the counts embodies conduct that is treated as a specific offense characteristic in . . . the guideline applicable to another of the counts." USSG § 3D1.2(c). The district court grouped Marseille's offenses because, under USSG § 3C1.1, the witness threatening offense is treated as a specific offense characteristic of the ammunition possession offense, and increases the applicable offense level by 2. USSG § 3C1.1. The base offense level for the ammunition possession offense, in

---

[3] Marseille does not appeal the district court's treatment of Marseille's juvenile convictions.

Marseille's circumstances, is 24. USSG § 2K2.1(a)(2).

The district court next applied three adjustments to Marseille's offense level from Chapter Three of the Guidelines. First, the court increased the offense level by 2 because Marseille obstructed justice, as discussed above. Second, the court gave Marseille a 2-level credit for accepting responsibility under USSG § 3E1.1(a). Third, the district court gave Marseille a 1-level credit for pleading guilty in a timely fashion under USSG § 3E1.1(b)(2). Before considering Chapter Four enhancements, then, the district court determined that Marseille's offense level was 23.

Next, the district court applied the criminal history category guideline in Chapter Four, Part A. USSG § 4A1.1. Marseille had six prior criminal sentences subject to counting. Those prior sentences yielded 12 criminal history points. Twelve points is the maximum amount allowable to qualify for a criminal history category V. USSG § 5A. Consequently, after applying the guidelines in Chapter Two, Chapter Three, and Part A of Chapter Four, the district court determined that Marseille had an offense level of 23 and a criminal history category V, which together yield a sentencing range of 84-105 months.

The district court had yet to apply two important sentencing enhancements from Chapter Four, Part B, however, and these worked to double Marseille's

sentencing range. First, the district court determined that Marseille is a career offender under § 4B1.1(a). That guideline specifies that a defendant is a career offender if his crime was a crime of violence, he was at least eighteen years old when he committed the crime, and he has two or more prior convictions for violent or drug-related offenses. USSG § 4B1.1(a). The district court found that the career offender guideline applies to Marseille because his threat against the CI was a crime of violence, and Marseille's juvenile convictions count as prior convictions under the guideline.[4]

Applying the career offender guideline did not change Marseille's offense level, however, because the maximum penalty for threatening a witness is ten years, which yields a lower offense level than otherwise applicable. According to § 4B1.1(b), the enhanced offense level for a crime punishable by ten years is 24—two levels lower than the 26 it would have been if analyzed solely under Chapters Two and Three.[5] Because subsection (b) of the career offender guideline requires the court to use the greater offense level, the higher level controlled.

Applying the career offender guideline did, however, change Marseille's

---

[4] The parties agree that Marseille was older than 18 years of age when he made the threat.

[5] Both these offense levels are applicable prior to any adjustments for accepting responsibility. There is a 2-level difference in offense level both before and after these adjustments.

7

*criminal history category.* Subsection (b) provides that a "career offender's criminal history category in every case under this subsection shall be Category VI." USSG § 4B1.1(b). Thus, the district court's finding that Marseille is a career offender increased his criminal history category from V to VI, but left his offense level unchanged at 23.

Finally, the district court found that Marseille is an armed career criminal under § 4B1.4. That guideline applies to any "defendant who is subject to an enhanced sentence under the provisions of 18 U.S.C. § 924(e)." USSG § 4B1.4(a). It requires a district court to enhance such a defendant's offense level and criminal history category above those provided for in other guidelines. The district court found Marseille was an armed career criminal on the basis of his prior convictions and his commission of a crime under 18 U.S.C. § 922. The guideline specifies that the offense level for an armed career criminal is the greatest of: (1) the offense level from Chapters Two and Three (26 in this case); (2) the offense level from the career offender guideline (24 in this case); or (3) 33.[6] In this case, the default offense level of 33 is greatest, and the district court

[6] The offense level may be 34 if, as was not the case here, the defendant used the ammunition "in connection with either a crime of violence . . . or a controlled substance offense . . . or if the firearm possessed by the defendant was of a type described in 26 U.S.C. § 5845(a)." USSG § 4B1.4(b)(3)(A).

determined it applies to Marseille. The court reduced the offense level by three—to 30—for Marseille's timely acceptance of responsibility. Similarly, subsection (c) of the armed career criminal guideline directs the court to apply the greatest criminal history category otherwise applicable. USSG § 4B1.4(c). Since the career offender guideline called on the court to assign Marseille the highest criminal history category, the district court found Marseille's category to be a VI.

Having concluded that Marseille's criminal history category is VI under the career offender guideline, and that his offense level is 30 under the armed career criminal guideline, the district court sentenced Marseille to 210 months on the ammunition possession charge, the highest possible sentence under the applicable 168-210 sentencing range.

## II.

Marseille first argues that the district court improperly determined him to be a career offender under § 4B1.1(a). That conclusion, he argues, led the court to decide his criminal history category is VI under § 4B1.1(b), and increase his sentencing range to 168-210 months from 151-188 months. Because the district court sentenced him to 210 months, Marseille asks us to reverse and remand for resentencing.

The thrust of Marseille's first argument is that he cannot be considered a

career offender under § 4B1.1(a) because § 3D1.2 required the district court to group Marseille's two convictions together. Once grouped, he argues, the district court should have treated the ammunition possession offense as the predicate offense for all guideline calculations; any consideration of the threat conviction was improper, except as specifically required by a Chapter Three guideline.[7] The career offender guideline applies to a defendant only if her "instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense." USSG § 4B1.1(a). Marseille contends that the "instant offense of conviction" is the offense treated as the predicate offense under the grouping guidelines in Chapter Three—in this case, the ammunition possession conviction. Since ammunition possession is not a crime of violence, the career offender guideline should not apply. We disagree, and hold that the district court properly considered both convictions in deciding whether Marseille was a career offender.

---

[7] Even under the guideline that calls for a 2-level adjustment for obstructing justice, the ammunition offense is the predicate offense, as the language of the guideline makes clear:

> If (A) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the investigation, prosecution, or sentencing of the instant offense of conviction, and (B) the obstructive conduct related to (i) the defendant's offense of conviction and any relevant conduct; or (ii) a closely related offense, increase the offense level by 2 levels.

USSG § 3C1.1.

The core problem for Marseille's argument is that the grouping guidelines make it clear that grouping controls the guideline calculations in Chapters Two and Three, but not Chapter Four. Guideline § 3D1.1 directs the court to group closely related convictions according to the rules in § 3D1.2 and to calculate an offense level for the group by applying the rules in § 3D1.3. Guideline § 3D1.2 states that a conviction that is "treated as a specific offense characteristic in, or other adjustment to, the guideline applicable to another of the counts" should be grouped with that other conviction. USSG § 3D1.2(c). Marseille's witness threatening conviction is treated as an adjustment to his ammunition possession conviction, so the two convictions should be grouped. USSG § 3C1.1. The Guidelines then direct the court to determine the offense level for the grouped convictions by determining which conviction carries the greatest offense level. USSG § 3D1.3(a). Crucially, § 3D1.3(a) specifies that the "offense level applicable to a Group is the offense level, determined in accordance with Chapter Two and Parts A, B, and C of Chapter Three."[8] USSG § 3D1.3(a). Marseille's ammunition possession conviction, including an obstruction of justice adjustment, yields an offense level of 26. Guideline 3D1.5 directs the court to "[u]se the

_____

[8] Commentary note 1 to § 3D1.3 defines "offense level" for purposes of the guideline as "the offense level from Chapter Two after all adjustments from Parts A, B, and C of Chapter Three." USSG § 3D1.3, cmt. n.1.

11

combined offense level to determine the appropriate sentence in accordance with the provisions of Chapter Five" (the sentencing table). USSG § 3D1.5. The commentary to that same guideline notes, however, that "[t]he combined offense level is subject to adjustments from Chapter Three, Part E (Acceptance of Responsibility) and Chapter Four, Part B (Career Offender and Criminal Livelihood)." USSG § 3D1.5, cmt. n. As we read this language, the grouping guidelines do not control Chapter Four enhancements. They provide that the sentencing court determine the offense level applicable to the grouped convictions and afterward consider whether any adjustments or enhancements apply due to the offender's criminal history. That is precisely the procedure the district court followed in this case. It determined that as an armed career criminal, Marseille's offense level should be enhanced from 26 to 33, and that as a career offender his criminal history category should be enhanced from V to VI.

As a consequence, we hold that the district court correctly considered the witness threatening conviction to be an "instant offense of conviction" under § 4B1.1. Because the witness threatening conviction was a crime of violence, the district court correctly found that Marseille is a career offender under that guideline. In so holding, we agree with the Ninth Circuit that where a defendant is being sentenced on two offenses, both are "instant offenses" under the career

12

offender guideline in Chapter Four. <u>United States v. Newland</u>, 116 F.3d 400, 403 (9th Cir. 1997). The grouping rules no longer require the court to treat only one of the instant convictions as the predicate offense, and the offense level that derives from a Chapter Four enhancement for either individual offense may supersede the offense level calculated using the guidelines in Chapters Two and Three for the grouped offenses.[9]

It is perfectly sensible that both Marseille's convictions should interact to produce a sentence that reflects both independent wrongs. Insofar as Marseille suggests that the grouping guidelines required the court to disregard his witness threatening conviction entirely, he could not be more mistaken. Even under the district court's initial Chapter Two and Chapter Three calculations, the witness threatening conviction increased Marseille's offense level two levels, from 24 to 26. This adjustment, if not overridden, would have yielded an increase of twenty-two months in maximum possible sentence.[10] The district court increased Marseille's maximum sentence by an identical number of months by enhancing his

---

[9] We disagree with the Ninth Circuit in one respect; we do not think the grouping rules control calculations under Chapter Four. We believe that it follows from, rather than despite, the fact that the grouping rules do not control Chapter Four calculations that any single current offense of conviction constitutes an "instant offense" for the purpose of deciding whether a defendant is a career offender under § 4B1.1.

[10] The increase is 22 months if Marseille's criminal history category were V, as it would have been had the career offender enhancement from Chapter Four not applied.

13

criminal history category based on his witness threatening conviction. His offense level is 30, whether or not the career offender enhancement applies. Considering his threat conviction as an "instant offense" under that enhancement has no effect except to increase Marseille's criminal history category from V to VI. Doing so increases his sentencing range from 151-188 to 168-210. Taking the threat into account under the career offender guideline, then, also produces an increase in maximum sentence of twenty-two months. Thus, considering both concurrent convictions under the Chapter Four enhancements simply reproduces the sentencing effect of treating one conviction as an upward adjustment of the other under Chapters Two and Three.

Failing to consider both offenses as predicate offenses under Chapter Four strips the threat conviction of any importance whatsoever, which is inconsistent with the purpose of the Guidelines. Under Marseille's proposed rule, he would receive the same sentencing range whether he threatened the CI or not. Marseille should not escape punishment for being a career offender on the basis that he committed an *additional* offense. On the contrary, Congress made it clear in the Sentencing Commission's enabling statute that "[t]he Commission shall assure that the guidelines specify a sentence to a term of imprisonment at or near the maximum term authorized for" career offenders, among others. See 28 U.S.C. §

14

994(h).  The result Marseille advocates, then, is contrary to the language of the

Guidelines, their commentary, and the express intent of Congress.

**III.**

Marseille also challenges the district court's determination that his criminal

history category is VI under § 4B1.1 on the basis that his case does not "come

under" subsection (b) of the guideline.[11]  We have already upheld the district

court's decision that Marseille satisfies the definition of "career offender" provided

in § 4B1.1(a).  Having decided that Marseille is a career offender under subsection

(a), the district court turned to § 4B1.1(b), which provides that a "career offender's

criminal history category in every case *under this subsection* shall be Category VI"

---

[11] Marseille bases his argument on the version of the Guidelines in effect at the time of his sentencing.  The career offender guideline was amended in November of 2002, after Marseille committed the instant offenses, which raises the question: which version of the guideline should the district court have applied?  The amendment broke the first portion of the guideline into two subsections and added the "under this subsection" language in subsection (b) upon which Marseille now relies.  Compare USSG § 4B1.1(a) & (b) (Nov. 2002) ("A career offender's criminal history category in every case *under this subsection* shall be Category VI.") (emphasis added), with USSG § 4B1.1 (Nov. 2001) ("A career offender's criminal history category in every case shall be Category VI.").  The amendment also created an entirely new category of career offender by adding subsection (c), to which subsection (b) does not apply.  USSG § 4B1.1(c); USSG § 4B1.1(b) (excepting cases under subsection (c) from the operation of subsection (b)).  The district court properly applied the version of the guideline in effect at Marseille's sentencing.  According to 18 U.S.C. § 3553(a), "[t]he court, in determining the particular sentence to be imposed, shall consider . . . the kinds of sentence and the sentencing range . . . set forth in the guidelines . . . in effect on the date the defendant is sentenced."  18 U.S.C. § 3553(a)(4)(A).  This prescription may be overridden by the Ex Post Facto Clause's proscription against imposing additional penalties for crimes already committed.  United States v. Simmons, 368 F.3d 1335, 1337-38 (11th Cir. 2004).  Since the change in the career offender guideline does not work an increase in Marseille's punishment, the district court properly applied the version of the guideline in effect at his sentencing.  18 U.S.C. § 3553(a)(4)(A).

15

(emphasis added), to determine that Marseille's criminal history category is VI—the highest category under the Guidelines. Marseille argues that his case does not, in the final analysis, come under subsection (b) because the district court did not apply the offense level table in that subsection to determine Marseille's offense level. Instead, the district court turned to the armed career criminal guideline, § 4B1.4, to assign Marseille's crime an offense level of 30. Since § 4B1.1(b) provides that only defendants whose cases come "under this subsection" have a criminal history category VI, and the district court did not in fact apply the offense level table in subsection (b), he argues that the district court erred by assigning him a criminal history category VI.

Marseille's argument misrepresents the calculations. He mistakenly concludes from the fact that § 4B1.1(b) did not produce the offense level the district court ultimately applied, that the career offender guideline was not applicable at all. In fact, the district court applied both the career offender and armed career criminal guidelines, but followed the direction of both guidelines by holding that a greater offense level overrides a lesser offense level. Subsection (b) provides for the contingency that some other guideline may override its assignment of an offense level. USSG § 4B1.1(b). And § 4B1.4(b)(2) specifies that it may in some cases override the offense level otherwise applicable under §

16

4B1.1(b). USSG § 4B1.4(b)(2). In this case, the offense level called for by the career offender guideline (24) is lower than the offense level called for by Chapter Two and Chapter Three (26) and by the armed career criminal guideline (33). We hold that a case arises under subsection (b) of the career offender guideline in every case in which the defendant qualifies as a career offender under subsection (a). The sole exception to this rule is the one provided for by subsection (b) itself, which explicitly takes those defendants convicted under 18 U.S.C. § 924(c) or 18 U.S.C. § 929(a)[12] out of the purview of the subsection. USSG § 4B1.1(b). Consequently, Marseille's case does arise under the career offender guideline, and the district court properly determined that Marseille's criminal history category is VI.

## IV.

Finally, Marseille argues that the district court improperly enhanced both his sentences based on his four prior convictions for violent and drug-related

---

[12] These statutes criminalize carrying firearms or possessing certain kinds of ammunition to further the commission of a crime of violence or a drug trafficking crime. Guideline 4B1.1(c) increases the sentences for such defendants. The background note explains that "[t]he Career Offender Table in subsection (c)(3) provides a sentence at or near the statutory maximum for these offenders by using guideline ranges that correspond to criminal history category VI and offense level 37." USSG § 4B1.1, cmt. backg'd. Thus, subsection (b) exempts cases that arise under subsection (c) because the provisions of subsection (c) make assigning a defendant a criminal history category superfluous. It is to cases under subsection (c) that subsection (b) adverts in limiting its assignment of criminal history category VI to cases "under this subsection."

felonies.  The problem with these decisions, he argues, is that the government did not allege the prior convictions in the indictment.  Marseille argues that the government operated under a duty to do so based on the reasoning of Apprendi v. New Jersey, 530 U.S. 466 (2000).

In Almendarez-Torrez v. United States, the Supreme Court held that the government need not allege in its indictment and need not prove beyond a reasonable doubt that a defendant had prior convictions for a district court to use those convictions for purposes of enhancing a sentence.  523 U.S. 224, 228 (1998).  Though its later opinion in Apprendi questioned the continuing validity of the Almendarez-Torrez holding, it explicitly refused to reconsider the issue.  530 U.S. at 489-90.  Marseille asks this court to extend Apprendi's rationale and overrule Almendarez-Torrez.  As Marseille acknowledges,[13] his wish is beyond our powers to grant.  United States v. Thomas, 242 F.3d 1028, 1034-35 (11th Cir. 2001) (refusing to reconsider the holding of Almendarez-Torrez in the light of Apprendi because of the "very basic fact that we cannot overrule Supreme Court decisions").  Marseille admits that he has prior qualifying convictions.  He challenges the district court's determination that he was a career offender only on

---

[13] Marseille seeks only to reserve this issue for the purpose of seeking review of the Almendarez-Torrez holding in the Supreme Court.

18

the ground that the government failed to allege those convictions in the indictment.[14]  We affirm the district court's determination.

## V.

For the reasons given above, we AFFIRM the judgment of the district court in all respects.

---

[14] Marseille has submitted the Supreme Court's recent decision in Blakely v. Washington, 124 S. Ct. 2531 (2004), pursuant to Federal Rule of Appellate Procedure 28(j), suggesting that the decision impacts his appeal.  We have reviewed Blakely and conclude that it is inapposite. Only two factors increased Marseille's sentence: (1) that he obstructed justice by threatening a witness against him and (2) that he had prior convictions.  Marseille admitted to obstructing justice as part of his plea.  And though the district court found that Marseille had prior convictions, Blakely does not take such fact-finding out of the hands of the courts.  Id. at 2536.