# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-41510

United States Court of Appeals
Fifth Circuit

**FILED**
September 29, 2016

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff – Appellee

v.

MELVIN STANFORD GORDON,

Defendant – Appellant

Appeal from the United States District Court
for the Southern District of Texas

Before STEWART, Chief Judge, and CLEMENT and HAYNES, Circuit Judges.

CARL E. STEWART, Chief Judge:

Defendant-Appellant Melvin Stanford Gordon pleaded guilty as charged to two counts of transportation of an undocumented alien and one count of possession with intent to distribute less than 50 kilograms (kgs) of marijuana. The district court sentenced Gordon to 41 months' imprisonment followed by a 3-year term of supervised release which included a special condition that he participate in a mental health program as deemed necessary and approved by the probation officer. For the following reasons we AFFIRM the district court's judgment imposing 41 months' imprisonment followed by a 3-year term of

No. 15-41510

supervised release.  We VACATE the special condition that Gordon participate in a mental health program and REMAND for further proceedings.

## I. Facts & Procedural Background

According to the Presentence Investigation Report ("PSR"), on December 15, 2014, Gordon was driving a Toyota Tercel when he was stopped at a U.S. Border Patrol checkpoint located near Falfurrias, Texas.  A service canine alerted to the trunk of Gordon's vehicle and he consented to a search of the trunk.  When the trunk was opened, agents discovered two subjects inside, a minor male[1] and an adult female, who were Mexican citizens illegally present in the United States.  The aliens, who were siblings, were covered with clothes and duffle bags, and their faces were red and sweaty.  The female required assistance to get out of the trunk because her legs were numb from having ridden in the confined space for so long.  Both aliens stated that they were thirsty and agents observed that there was no way for them to exit the trunk independently; it could only be opened from the outside.  The service canine then alerted to the backseat of Gordon's vehicle where agents removed two rear quarter panels and discovered four wrapped bundles totaling 1.13 kgs of marijuana.  Gordon was arrested and declined to provide a statement or answer any questions without an attorney present.

In January 2015, a federal grand jury returned a three-count indictment against Gordon charging him with two counts of transportation of an undocumented alien in violation of 8 U.S.C. § 1324(a)(1)(A)(ii),(B)(ii) and one count of possession with intent to distribute less than 50 kgs of marijuana in

---

[1] The PSR indicates that the minor male was seventeen years old.

2

No. 15-41510

violation of 21 U.S.C. § 841(a)(1),(b)(1)(D).  In March 2015, without a plea agreement, Gordon pleaded guilty to all three counts in the indictment.

In calculating Gordon's recommended sentence, the PSR applied the Sentencing Guidelines' grouping rules, wherein counts involving substantially the same harm are combined into a single group.  U.S.S.G. §§ 3D1.2(d), 1B1.3.  Under these rules, the total combined adjusted offense level was determined to be 18.[2]

Next, the PSR recommended application of the "career offender" enhancement pursuant to U.S.S.G. § 4B1.1, because Gordon was at least 18 years old when convicted of the instant felony controlled substance offense and he had at least two prior felony convictions for controlled substance offenses.  The offense level for a career offender is 17, but because Gordon's combined adjusted offense level was greater than 17, *i.e.*, 18, the higher offense level was used.  Gordon's offense level was then reduced by 3 for acceptance of responsibility.  U.S.S.G. § 3E1.1(a),(b).  Thus, Gordon's total recommended offense level was 15.

The PSR determined that Gordon's criminal history score was 9, which established a criminal history category of IV.  However, in light of Gordon's designation as a "career offender" under U.S.S.G. § 4B1.1(a), his criminal history category was increased to VI.  U.S.S.G. § 4B1.1(b).

With a total offense level of 15 and a criminal history category of VI, the recommended Guidelines range was 41–51 months' imprisonment.  U.S.S.G. Sentencing Table, Ch. 5, pt. A.  Paragraph 57 of the PSR states that "[t]he

---

[2] Gordon does not appeal the application of the grouping rules to the calculation of his sentence.

No. 15-41510

defendant reported no history of mental or emotional health related problems and this investigation has revealed no information to indicate otherwise."[3]

Gordon's sentencing hearing was held in October 2015. During the hearing Gordon objected, arguing that because the PSR applied the higher adjusted offense level of 18, rather than the career offender offense level of 17 under Section 4B1.1(b), he should not have been assigned the career offender criminal history category of VI under that subsection. The district court overruled Gordon's objection and accepted the PSR's recommended offense level of 15, criminal history category of VI, and sentencing range of 41–51 months' imprisonment. The district court sentenced Gordon to 41 months' imprisonment for each of the three counts, to run concurrently. The district court then imposed a 3-year term of supervised release. With respect to the supervised release term, the district court specified as follows:

> Based on the information in the report, I'm going to order drug and/or alcohol treatment as deemed necessary and approved by the probation officer, as well as require you to participate in anger management counseling as deemed necessary and approved by the probation officer, as well as require you to participate in a mental health program as deemed necessary and approved by the probation officer. The Court will not impose a fine. The Court has considered the advisory guideline sentencing factors set forth in 3553. The Court finds that the sentence imposed is sufficient but not greater than necessary to impose an appropriate sentence. The

---

[3] The record contains a separate sealed "Confidential Sentencing Recommendation" ("CSR") signed by the Acting Chief and Supervising Probation Officers, that was filed on the same day as the PSR, where a separate discussion of Gordon's mental health is detailed. The CSR recommends a 3-year term of supervised release with a special condition that Gordon undergo drug and alcohol treatment, anger management counseling, and that he participate in a mental health program "as deemed necessary and approved by the probation officer." In a paragraph labeled "Justification," the CSR states that "[a]nger management and mental health counseling are recommended based on the violent nature of two of the defendant's prior convictions and the pending charge."

No. 15-41510

Court finds the sentence promotes respect for the law
and provides just punishment.

Gordon did not object at the sentencing hearing to the mental health program
special condition and in November 2015, timely filed this appeal.

## II. Discussion

*A. Application of the Sentencing Guidelines*

Gordon first argues on appeal that the district court erred in determining
that he qualified as a career offender with a criminal history category
designation of VI under subsection (b) of Section 4B1.1 when it did not also
apply the offense level from the table in that subsection.

We review a sentencing decision for reasonableness. *Gall v. United
States*, 552 U.S. 38, 46 (2007). We first "determine[] whether the district court
committed any significant procedural error." *United States v. Groce*, 784 F.3d
291, 294 (5th Cir. 2015). In this step, the district court's interpretation or
application of the Sentencing Guidelines is reviewed de novo and its factual
findings are reviewed for clear error. *Id.* (citation omitted). Next, "[i]f there is
no procedural error or the error is harmless, this court then reviews the
substantive reasonableness of the sentence imposed for an abuse of discretion."
*Id.*

Section 4B1.1 of the Guidelines provides in part:

(a) A defendant is a career offender if (1) the defendant was at least
eighteen years old at the time the defendant committed the instant
offense of conviction; (2) the instant offense of conviction is a felony
that is either a crime of violence or a controlled substance offense;
and (3) the defendant has at least two prior felony convictions of
either a crime of violence or a controlled substance offense.

(b) Except as provided in subsection (c), if the offense level for a
career offender from the table in this subsection is greater than the
offense level otherwise applicable, the offense level from the table
in this subsection shall apply. A career offender's criminal history

5

No. 15-41510

category in every case under this subsection shall be Category VI.

| **Offense Statutory Maximum** | **Offense Level** |
|---|---|
| . . . | |
| (6) 5 years or more, but less than 10 years | 17 |
| . . . | |

(c) If the defendant is convicted of 18 U.S.C. § 924(c) or § 929(a), and the defendant is determined to be a career offender under subsection (a), the applicable guideline range shall be determined as follows . . . .

U.S.S.G. § 4B1.1(a)–(c).

The issue of whether a case "arises under" subsection (b) of Section 4B1.1 of the career offender guideline when the district court does not also apply the offense level from the table in that subsection is res nova in this circuit. The Eleventh Circuit was the first to expressly address the issue in *United States v. Marseille*, 377 F.3d 1249 (11th Cir. 2004). In that case, the defendant, like Gordon, argued that "his case does not, in the final analysis, come under subsection (b) because the district court did not apply the offense level table in that subsection to determine [the defendant's] offense level." *Marseille*, 377 F.3d at 1256. There, rather than applying the offense level from the table under subsection (b), the district court applied the offense level under the armed criminal career guideline because it was greater. *Id.* In rejecting the defendant's argument, the Eleventh Circuit explained:

> [The defendant] mistakenly concludes from the fact that § 4B1.1(b) did not produce the offense level the district court ultimately applied, that the career offender guideline was not applicable at all. In fact, the district court applied both the career offender and armed career criminal guidelines, but followed the direction of

6

both guidelines by holding that a greater offense level overrides a lesser offense level.

. . .

We hold that a case arises under subsection (b) of the career offender guideline in every case in which the defendant qualifies as a career offender under subsection (a). The sole exception to this rule is the one provided for by subsection (b) itself, which explicitly takes those defendants convicted under 18 U.S.C. § 924(c) or 18 U.S.C. § 929(a) out of the purview of the subsection. USSG § 4B1.1(b). Consequently, [the defendant's] case does arise under the career offender guideline, and the district court properly determined that [the defendant's] criminal history category is VI.

*Id.* at 1256–57 (footnote omitted).

Soon thereafter, the D.C. Circuit expressed agreement with the Eleventh Circuit's interpretation of the Guidelines, noting that "[Section] 4B1.1(b) says that 'a career offender's criminal history category in every case under this subsection shall be Category VI,' not merely in cases in which the career offender classification accounted for the base offense level." *United States v. Miller*, 395 F.3d 452, 456 (D.C. Cir.), *vacated on other grounds by Miller v. United States*, 545 U.S. 1101 (2005) (alterations omitted) (quoting *Marseille*, 377 F.3d at 1256–57).

In *United States v. Waters*, 648 F.3d 1114 (9th Cir. 2011), the Ninth Circuit also affirmed a district court's similar interpretation of Section 4B1.1. There, the district court applied a greater otherwise applicable offense level because it exceeded the offense level provided in the table under that subsection, yet proceeded to assign the defendant a criminal history category of VI, citing Section 4B1.1(b)'s express language that "[a] career offender's criminal history category in every case under this subsection shall be Category VI." *Id.* at 1115 (citing U.S.S.G. § 4B1.1(b)). The Ninth Circuit upheld the district court's application of the Guidelines in this regard, signaling

agreement with the Eleventh and D.C. Circuits. *Id.* at 1118–19 ("[The defendant] was sentenced under both of these guidelines provisions [§ 4B1.1(b) and § 2D1.1(c)]—and properly so.").

Our review of the plain text of the Guidelines supports these circuit court interpretations of Section 4B1.1(b). In interpreting the Guidelines, this court applies "the ordinary rules of statutory construction." *United States v. Serfass*, 684 F.3d 548, 551 (5th Cir. 2012). If "the language of the guideline is unambiguous, the plain meaning of that language is controlling unless it creates an absurd result." *Id.*

It is undisputed that Gordon qualifies as a career offender under subsection (a) and does not qualify for the carve-out provided in subsection (c) for offenders convicted under 18 U.S.C. § 924(c) or § 929(a). *See* U.S.S.G. § 4B1.1(a),(c). Thus, under subsection (b), the district court is required to apply that subsection's offense level only if it is greater than the "offense level otherwise applicable." *Id.* § 4B1.1(b). Consequently, the district court applied the otherwise applicable adjusted combined offense level of 18, since it was greater than the offense level provided in the table in subsection (b)—level 17. There is nothing in the subsection that suggests, however, that applying the "offense level otherwise applicable" somehow removes the district court from the purview of subsection (b). *Id.* A more reasonable reading is that by applying the "otherwise applicable" offense level, the district court's application fell under that subsection, since doing so required it to follow the explicit instructions set forth therein. *See id.* The final sentence in that subsection states that "[a] career offender's criminal history category in every case under this subsection shall be Category VI." *Id.* This language is unambiguous. If a defendant is designated as a career offender under subsection (a) and his case falls under subsection (b), and he is not exempted

8

under subsection (c), he will be assigned a criminal history category of VI, as the district court did here.

In sum, because we find the reasoning in *Marseille*,[4] *Miller*, and *Waters* persuasive and supported by the plain text of the Guidelines, we now join our sister circuits in holding that, notwithstanding the express exceptions set forth in subsection (c), "a case arises under subsection (b) of the career offender guideline in every case in which the defendant qualifies as a career offender under subsection (a)." *Marseille*, 377 F.3d at 1257; *see Miller*, 395 F.3d at 456; *cf. Waters*, 648 F.3d at 1118–19.[5]

## B. Mental Health Program Special Condition

Second, Gordon argues that the district court committed reversible plain error by imposing a special condition of supervised release requiring him to participate in a mental health program "as deemed necessary and approved by the probation officer." The Government does not challenge Gordon's position

---

[4] Gordon argues for the first time in his reply brief that the rule of lenity compels this court's adoption of his alternative interpretation of the Guidelines. *See United States v. Bustillos-Pena*, 612 F.3d 863, 868–69 (5th Cir. 2010) ("Although the provisions of the Sentencing Guidelines are not statutes, we apply the rule of lenity to them when we find that they are ambiguous."). We disagree for two reasons. First, our plain text reading of Section 4B1.1 does not indicate that it is ambiguous. *See id*. at 868. Second, in light of our aforementioned reasoning, we do not find plausible Gordon's interpretation that a case only arises under Section 4B1.1(b) when the district court also applies the offense level from the table under that subsection. Moreover, we ordinarily do not consider arguments raised for the first time on appeal in a reply brief. *See Hardman v. Colvin*, 820 F.3d 142, 152 (5th Cir. 2016).

[5] We also note that these circuit court interpretations of the Guidelines support the congressional directive that career offenders receive a sentence of imprisonment "at or near the maximum term authorized." U.S.S.G. § 4B1.1 cmt. backg'd (2004); *see United States v. Cashaw*, 625 F.3d 271, 274 (5th Cir. 2010).

on this issue and instead requests that this court vacate and strike the special condition as unsupported by the record evidence.

This court typically reviews the imposition of a special condition of supervised release for abuse of discretion. *United States v. Rodriguez*, 558 F.3d 408, 411 (5th Cir. 2009) (citation omitted). However, because Gordon failed to object at the district court proceedings, plain error review applies. *United States v. Peltier*, 505 F.3d 389, 391 (5th Cir. 2007). "Plain error exists if (1) there is an error, (2) the error is plain, . . . (3) the error affect[s] substantial rights and (4) the error seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *United States v. Garcia-Carrillo*, 749 F.3d 376, 378 (5th Cir. 2014) (per curiam) (internal quotation marks omitted). "We determine whether an alleged error is plain by reference to existing law at the time of appeal." *United States v. Bishop*, 603 F.3d 279, 281 (5th Cir. 2010).

The district court has wide discretion to impose upon a defendant a term of supervised release as part of its sentencing decision. *United States v. Salazar*, 743 F.3d 445, 451 (5th Cir. 2014) (citation omitted); 18 U.S.C. § 3583(d). However, "such conditions must be reasonably related to one of the following statutory factors: (i) the nature and circumstances of the offense and the history and characteristics of the defendant; (ii) the need to afford adequate deterrence to criminal conduct; (iii) the need to protect the public from further crimes of the defendant; and (iv) the need to provide the defendant with needed training, medical care, or other correctional treatment in the most effective manner." *Salazar*, 743 F.3d at 451 (citing 18 U.S.C. § 3553(a)(1)–(2)). If a condition is reasonably related to any of these four factors, it satisfies the requirements. *Id.* (citation omitted). "[S]upervised release conditions cannot involve a greater deprivation of liberty than is reasonably necessary to achieve the statutory goals." *Id.* (internal quotation marks omitted). A sentencing court is required "to state the reasons for its imposition of the particular

sentence." *Id.* (internal quotation marks omitted). Where the district court's rationale is unclear, however, this court can affirm when its "reasoning can be inferred after an examination of the record." *Id.*

Here, the Government and Gordon both agree that the district court's imposition of the special condition requiring Gordon to participate in mental health counseling is unsupported by the record. The parties both direct this court to the part of the district court's order requiring Gordon to participate in anger management counseling as part of his supervised release conditions. They submit that the anger management counseling requirement addresses any issues apparent in the record involving Gordon's history of anger and violence, thereby rendering the mental health treatment requirement superfluous given the absence of any record evidence indicating that he has a questionable mental health history or a particular diagnosis requiring mental health treatment. We find these arguments persuasive.

The district court stated that it was imposing the special condition "based on the information in the report." Although there is nothing in the PSR relating to a history of mental health treatment, the CSR stated that it recommended the mental health treatment "based on the violent nature of two of the defendant's prior convictions and the pending charge." These reasons, however, only relate to the district court's imposition of anger management counseling, not mental health treatment. Consequently, we conclude that the district court's imposition of the mental health condition is not reasonably related to any of the Section 3553 factors, nor can it be inferred from an examination of the record before us. *See Salazar*, 743 F.3d at 451 (citing 18 U.S.C. § 3553(a)(1)–(2)). As such, the district court plainly erred in imposing the mental health special condition. *See Garcia-Carrillo*, 749 F.3d at 378. We further conclude that the error affected Gordon's substantial rights. *See id.*

No. 15-41510

The imposition of the mental health treatment at Gordon's cost will present a significant financial burden, require him to attend multiple sets of treatment, and as Gordon points out, result in an unwarranted perception that he requires mental health treatment. *See id.* For these reasons, we find the exercise of this court's discretion to correct the error warranted under these circumstances. *Id.* at 378–79; *see United States v. Olano*, 507 U.S. 725, 736 (1993) ("The Court of Appeals should correct a plain forfeited error affecting substantial rights if the error 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'"). Accordingly, we vacate the special condition of supervised release imposed by the district court requiring Gordon to participate in mental health treatment as deemed necessary and approved by the probation officer.[6]

### III. Conclusion

In light of the foregoing, we AFFIRM the district court's judgment imposing 41 months' imprisonment followed by a 3-year term of supervised release. We VACATE the special condition requiring the Defendant-Appellant to participate in a mental health program and REMAND for further proceedings consistent with this opinion.

---

[6] Because we vacate the mental health special condition on these grounds, we need not reach Gordon's alternative argument that the district court's imposition of the condition was an impermissible delegation of judicial authority.

12