# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 17-30764

United States Court of Appeals
Fifth Circuit

**FILED**

July 11, 2018

UNITED STATES OF AMERICA,

Lyle W. Cayce
Clerk

Plaintiff – Appellee

v.

EDDIE BERAUD, JR., also known as Eddie Berard,

Defendant – Appellant.

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:16-CR-148

Before DAVIS, HAYNES, and DUNCAN, Circuit Judges.

PER CURIAM:*

Eddie Beraud, Jr. ("Beraud"), appeals the imposition of a special condition of supervised released requiring him to participate in a cognitive behavioral therapeutic treatment program, arguing that, because the condition does not reasonably relate to the statutory factors governing special conditions of release, the district court plainly erred. Because the condition is

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 17-30764

reasonably related to one of the factors set out by 18 U.S.C. § 3553(a), the district court did not commit plain error, and we AFFIRM.

## I.

In 2014, federal agents with the Federal Bureau of Investigation, the Bureau of Alcohol, Tobacco, Firearms, and Explosives, the Drug Enforcement Administration, and members of the New Orleans Police Department-led-Multi-City Gang Unit launched an investigation into acts of violence and narcotics trafficking linked to the New Orleans street gang known as the Mid-City Killers ("MCK"). Among others, the investigation identified Beraud and Henry Frazier, Jr. ("Frazier"), as associates, though not members, of MCK. Beraud has a history of criminal convictions spanning twenty-three years, including, among others, the illegal carrying of a weapon, possession of cocaine, domestic assault, and aggravated battery.

In October of 2014, Beraud and Frazier agreed to break into the home of C.L.[1] in New Orleans, Louisiana, intending to steal multiple pounds of marijuana and valuables they believed to be inside. Beraud targeted C.L.'s house in particular to steal marijuana and as "payback to get his stuff back."[2] Beraud and Frazier scouted the location and determined that the best way to enter C.L.'s home would be through a rear window. On October 23, 2014, Frazier broke the window and hid the shards of glass under the house, leaving behind his fingerprints on the pieces. On October 24, Beraud, Frazier, and an unnamed individual known to the U.S. Attorney ("Individual A") proceeded to the back of the house wearing ski masks and wielding firearms. Beraud and

---

[1] The government identifies C.L. and his wife only by their initials.
[2] Though Beraud stipulated to this motivation in the limited factual basis he submitted with his guilty plea, the record sheds no further light on the origins of the antagonism between Beraud and C.L.

No. 17-30764

Individual A entered the house, while Frazier remained outside, as did two other individuals who acted as lookouts during the burglary.

While Beraud and Individual A searched the home, C.L.'s wife, I.L., entered the front door. Beraud and Individual A pointed their guns at her, zip-tied her, and covered her face to prevent her from identifying them. They demanded that I.L. direct them to the valuables in the house. With I.L.'s key, Individual A let Frazier into the house, and the three armed men continued to search the home, taking jewelry and a drug press. During their search, C.L. also returned to the house. Beraud, Frazier, and their companion moved I.L. to a bedroom to conceal her. One of the men fired a single shot at C.L., missing him, and the trio fled out of the back door of the house carrying the jewelry and drug press.

Pursuant to an investigation, Frazier and Beraud were named in a two-count Bill of Information filed in the Eastern District of Louisiana. Count one charged Frazier and Beraud with conspiring to use, carry, and brandish firearms during and in relation to a drug trafficking crime. Count two charged them with conspiring to take and obtain personal property consisting of illegal drugs and proceeds of trafficking by means of actual and threatened force, violence, and fear of injury. On May 31, 2017, Beraud pleaded guilty to both counts and the district court accepted his plea. In his written plea agreement, Beraud agreed to waive his "right to appeal or contest his guilty plea, conviction, sentence, fine, [and] supervised release" unless the district court imposed "any . . . sentence in excess of the statutory maximum." During his sentencing, the district court did not specifically ask whether Beraud understood "the terms of any plea-agreement provision waiving the right to

3

appeal,"[3] but it did inquire as to whether Beraud understood the terms of his plea agreement and whether he had discussed the case with his lawyer.

The district court sentenced Beraud to eighty-six months of imprisonment and three years of supervised release. The supervised release included several special conditions; the only one Beraud challenges is the cognitive behavioral therapy ("CBT") condition. In the Pre-Sentence Investigation Report ("PSR"), the probation officer recommended that Beraud be required to undergo "cognitive programming," as follows:

> The defendant shall participate in an approved cognitive behavioral therapeutic treatment program and abide by all supplemental conditions of treatment. The defendant shall contribute to the cost of this program to the extent that the defendant is deemed capable by the United States Probation Officer.

The district court adopted the suggestion and ordered Beraud to "participate in an approved cognitive behavioral therapeutic treatment program." The treatment program, the district court stated, would "help [Beraud] with social decision making." Beraud did not object to the inclusion of the CBT condition in the PSR, nor did he object to its imposition at sentencing.

Beraud timely appealed, challenging the inclusion of the CBT special condition as a plain error on the part of the district court.

## II.

As a preliminary matter, the government argues that the express language in Beraud's plea agreement waives his ability to appeal the reasonableness of imposing CBT as a condition of supervised release. But in the plea agreement, Beraud explicitly preserved the right to appeal a sentence "in excess of the statutory maximum."

---

[3] FED. R. CRIM. PROC. 11(b)(N).

No. 17-30764

Special conditions of supervised release are considered part of a defendant's sentence.[4] As for whether the appeal waiver bars the instant appeal of the CBT condition, we pretermit the issue because, as described below, the district court committed no plain error.[5]

## III.

The parties' substantive disagreement concerns, as mentioned above, whether the imposition of the CBT condition amounted to plain error warranting vacatur. This Court "typically reviews the imposition of a special condition of supervised release for abuse of discretion."[6] But because Beraud failed to object either to the inclusion of the CBT special condition in the PSR or to its imposition at sentencing, we review for plain error, which requires "considerable deference to the district court."[7]

Plain error exists if (1) there is an error, (2) the error is plain, and (3) the error affects the defendant's substantial rights.[8] If these three prongs are satisfied, we have "the *discretion* to remedy the error—discretion which ought to be exercised only if the error seriously affects the fairness, integrity or public

---

[4] *See United States v. Higgins*, 739 F.3d 733, 739 (5th Cir. 2014) ("Because Higgins's challenge to the conditions of [supervised release] in the written judgment is an appeal of his sentence . . . , it is covered by the waiver of appeal unless it constitutes a 'punishment imposed in excess of the statutory maximum' as provided in the appeal waiver.").

[5] *See United States v. Story*, 439 F.3d 226, 230–31 (5th Cir. 2006) (concluding that this Court's jurisdiction is not dependent on the existence of a valid appeal waiver); *see also Higgins*, 739 F.3d at 739 ("[A]n appeal regarding the conditions of [supervised release] must be reviewed under 18 U.S.C. § 3583.").

[6] *United States v. Gordon*, 838 F.3d 597, 604 (5th Cir. 2016) (citing *United States v. Rodriguez*, 558 F.3d 408, 411 (5th Cir. 2009)).

[7] *United States v. Peltier*, 505 F.3d 389, 391–92 (5th Cir. 2007); *see* FED. R. CRIM. PROC. 52(b) ("A plain error that affects substantial rights may be considered even though it was not brought to the court's attention.").

[8] *Gordon*, 838 F.3d at 604 (quoting *United States v. Garcia-Carrillo*, 749 F.3d 376, 378 (5th Cir. 2014) (per curiam)).

reputation of judicial proceedings."[9]  "Meeting all four prongs is difficult, 'as it should be.'"[10]

## IV.

Beraud argues first that the district court erred by failing to explain how the CBT condition was reasonably related to the statutory factors articulated in 18 U.S.C. § 3583(d)(1).  Second, he argues that because "there is absolutely no evidence that Mr. Beraud suffers from any psychological or psychiatric issues needing mental-health treatment of any sort, let alone[] 'cognitive behavioral therapy,'" there is no reasonable relationship between the CBT condition and the statutory factors.

The government counters that the reason given by the district court for imposing the CBT condition—to improve Beraud's "social decision making"—was reasonably related to Beraud's characteristics, the nature of his offense, and the need to protect the public from further offenses.

District courts have broad discretion to impose special conditions of supervised release[11] so long as they are "reasonably related" to the factors set forth in § 3553(a)(1), (a)(2)(b), (a)(2)(c), and (a)(2)(d):

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant, (2) the need to afford adequate deterrence to criminal conduct, (3) the need to protect the public from further crimes of the defendant, and (4) the need to provide the defendant with needed training, medical care, or other correctional treatment in the most effective manner.[12]

---

[9] *Puckett v. United States*, 556 U.S. 129, 135 (2009) (internal quotation marks and alterations omitted).

[10] *Id.* (quoting *United States v. Dominguez Benitez*, 542 U.S. 74, 83 n.9 (2004)).

[11] *United States v. Fernandez*, 776 F.3d 344, 346 (5th Cir. 2015).

[12] *United States v. Paul*, 274 F.3d 155, 164–65 (5th Cir. 2001) (internal quotation marks and alterations omitted); *see also* 18 U.S.C. § 3583(d); 18 U.S.C. §§ 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D).

Additionally, supervised release conditions must not involve any "greater deprivation of liberty that is reasonably necessary" to achieve the purposes of the latter three factors.[13]  Finally, the conditions must be consistent with "any pertinent policy statement" issued by the Sentencing Commission.[14]

Though this Circuit has never specifically addressed CBT as an appropriate condition for the district court to impose, the Seventh Circuit, in *United States v. Siegel,* recognized it to be beneficial in appropriate circumstances.[15]  That court concluded that the imposition of CBT was proper in light of the defendant's history of substance abuse.[16]  It explained that "[c]ognitive behavioral therapy isn't just for the mentally ill; it can be an effective tool to help anyone learn how to better manage stressful life situations."[17]

Here, the district court's reason for imposing the condition—to improve Beraud's social decision making—is reasonably related to at least one of the four statutory factors courts consider in imposing special conditions.[18]  The nature of the home invasion, as well as Beraud's lengthy history of substance abuse, domestic violence, and criminal behavior demonstrates anti-social behavior and characteristics that could be effectively addressed by CBT.[19]  The imposition of CBT, then, is related to both "the nature and circumstances of the offense and the history and characteristics" of Beraud.[20]

---

[13] 18 U.S.C. § 3583(d)(2); *see Paul*, 274 F.3d at 165; U.S.S.G. § 5D1.3(b).

[14] 18 U.S.C. § 3583(d)(3).

[15] *See United States v. Siegel*, 753 F.3d 705, 716 (7th Cir. 2014).

[16] *Id.*

[17] *Id.*

[18] *See* 18 U.S.C. § 3553(a)(1), (a)(2)(D).

[19] *See Siegel*, 753 F.3d at 716.

[20] *See* 18 U.SC. § 3553(a)(1).

7

No. 17-30764

The facts in this case are not comparable to those in our unpublished opinions in either *United States v. Mahanera*[21] or *United States v. Garcia*,[22] as Beraud urges. In those cases, the district court gave no cogent explanation why the challenged mental health treatment condition was imposed.[23] Here, the district court gave a reason—if somewhat perfunctory—for the imposition of the CBT condition: to "help the defendant with social decision making."[24] Because the CBT condition is reasonably related to one of the factors set out by 18 U.S.C. § 3553(a) and other circuit law supports the imposition of the condition, any error by the district court was not clear or obvious.[25] Therefore, the district court committed no plain error.[26]

## V.

For these reasons, we AFFIRM the district court's judgment.

---

[21] 611 Fed. App'x 201 (5th Cir. 2015).

[22] 638 Fed. App'x 343 (5th Cir. 2016).

[23] In *Mahanera*, the defendant pleaded guilty to one count of trafficking in and attempting to traffic in counterfeit goods. The district court there imposed special conditions requiring the defendant: (1) to "participate in a program of testing and/or treatment for alcohol and/or drug abuse as directed by the probation office"; and (2) to "not possess, ingest, or otherwise use a synthetic cannabinoid or other synthetic narcotic unless prescribed by a licensed medical practitioner." 611 Fed. App'x at 202. Because the district court gave no explanation for the imposition of these conditions and because the record reflected no evidence of drug abuse, this Court vacated the challenged conditions and remanded the case to the district court. *Id.* at 203–04.

In *Garcia*, the district court imposed a mental health treatment, explaining only that "I considered all of the [§ 3553(a) factors] and think this would be the best possible deterrent and [will best] protect the public." 638 Fed. App'x at 345 (second alteration in original). On appeal, this Court vacated the condition, reasoning that a mere recitation of the factors did not explain how the condition was reasonably related to them and that the record revealed no evidence supporting a mental health treatment condition. *Id.* at 346.

[24] *See Mahanera*, 611 Fed. App'x at 202; *Garcia*, 638 Fed. App'x at 346.

[25] *See Paul*, 274 F.3d at 164–65; *Siegel*, 753 F.3d at 716.

[26] *See Gordon*, 838 F.3d at 604.